CLAYMAN, D.P.M., Appellant,

v.

STATE MEDICAL BOARD OF OHIO, Appellee.

[Cite as *Clayman v. State Med. Bd. of Ohio* (1999), 133 Ohio App.3d 122.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 98AP–1110.

Decided Aug..17, 1999.

**124**

*Crabbe, Brown, Jones, Potts & Schmidt, James D. Gilbert* and *Luis M. Alcalde,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Rebecca J. Albers,* Assistant Attorney General, for appellee.

DESHLER, Judge.

Plaintiff-appellant, Wayne R. Clayman, D.P.M., appeals from a judgment of the Franklin County Court of Common Pleas that affirmed an order of defendant-appellee, State Medical Board of Ohio (the "board"), revoking appellant's license to practice podiatric medicine in Ohio.

The disciplinary proceeding against appellant originally stemmed from his guilty plea to one felony count of engaging in monetary transactions in property derived from specified unlawful activity in violation of Section 1957, Title 18, U.S.Code. In this underlying federal criminal action, appellant stipulated to a number of facts in connection with his guilty plea. The appellant stipulated that he had engaged in a fraudulent practice or scheme known as "upcoding" of claims, involving assigning misleading Physician's Current Procedural Terminology ("PCPT") codes to various surgical procedures performed on patients, in order to bill the procedures at a higher rate to insurers. The insurance programs billed by appellant as part of this scheme included the Department of Defense's Civilian Health and Medical Program of Uniformed Services, Medicare, the Railroad Retirement Board Medicare Program, Medicaid, and various private insurers. Appellant further stipulated that as a result of the fraudulent billing, he received insurance reimbursement for more than he would have normally received had the procedure been properly billed, and that the proceeds obtained through this "mail fraud scheme" were deposited into, and transferred between, various bank accounts maintained by appellant.

Based upon the federal felony conviction, the board charged appellant with having published fraudulent statements, a violation of R.C. 4731.22(B)(5), with obtaining money by fraudulent misrepresentations in the course of practice, a violation of R.C. 4731.22(B)(8), and with having pled guilty to a felony, a violation of R.C. 4731.22(B)(9). Appellant was not charged with any violation of R.C. 4731.22(B)(6), failure to conform to minimal standards of patient care. The board charges against appellant were first addressed in an evidentiary hearing before an attorney hearing examiner, who subsequently issued a report and recommendation containing findings of fact and conclusions of law, and finding that appellant had violated R.C. 4731.22(B)(5), (8), and (9). The hearing examiner recommended to the board that appellant's certificate be permanently revoked, that the revocation be stayed, and that appellant be suspended for a minimum of three years with conditions for reinstatement imposed. Appellant did not file objections to the hearing examiner's report and recommendation, and the board subsequently convened to consider appellant's case. At the hearing before the board on October 8, 1997, appellant appeared, represented by counsel, and addressed the board, as did the Attorney General's office. The minutes of the subsequent discussion by the board reflect that the board not only discussed appellant's case in connection with his federal felony conviction, but also discussed various allegations that appellant had failed to conform to minimal standards of patient care. The board subsequently adopted, on November 20, 1997, the hearing examiner's findings of fact and conclusions of law, but disregarded the hearing examiner's recommendation as to penalty, and permanently revoked appellant's certificate.

Appellant then appealed to the Franklin County Court of Common Pleas pursuant to R.C. 119.12. The court of common pleas granted the board's motion to strike certain documentary exhibits submitted by appellant, and denied appellant's subsequent motion to admit the exhibits as additional evidence. The documents consisted of copies of past board decisions addressing disciplinary cases with similar facts, in which considerably lighter penalties were imposed than in appellant's case. On June 30, 1998, the court of common pleas rendered its decision affirming the board's order as supported by reliable, probative, and substantial evidence, and in accordance with law.

Appellant has timely appealed from the decision of the court of common pleas, and brings the following assignments of error:

"I. The trial court abused its discretion in affirming the November 20, 1997 order of the State of Ohio Medical Board permanently revoking the medical license of Wayne R. Clayman, D.P.M.

"II. The court of common pleas abused its discretion in granting the State Medical Board of Ohio's motion to strike exhibits B through G and/or denying appellant's motion to admit additional evidence."

At the outset, we note this appeal is brought pursuant to R.C. 119.12, under which the court of common pleas is required to review the administrative agency's order to determine whether it is supported by reliable, probative, and substantial evidence, and is in accordance with law. Upon appeal from the court of common pleas, this court's review is more limited; we are required to determine, with respect to most issues, only whether the court of common pleas abused its discretion in deciding whether the order of the board was supported by reliable, probative, and substantial evidence. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748, 750–751. Furthermore, the Supreme Court of Ohio has held that "[t]he fact that the court of appeals, or this court, might have arrived at a different conclusion than did the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264, 267. Questions on appeal that relate to interpretation and application of statutes, however, require that we exercise plenary powers of review. *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.* (1992), 63 Ohio St.3d 339, 587 N.E.2d 835. Likewise, issues relating to constitutionality and procedural due process arising from the board's action fall under a less deferential standard of review than the abuse of discretion standard set forth above. *Slorp v. Dept. of Adm. Serv.* (Apr. 30, 1998), Franklin App. No. 97APE08–1136, unreported, 1998 WL 212759.

Appellant's first assignment of error asserts that the board violated fundamental principles of fairness and due process at his hearing by addressing issues related to patient care, with which appellant had not been charged. Appellant's position is that the severity of the sanction imposed by the board, which exceeded that recommended by the hearing examiner, was in large part based on the prejudicial effect of these patient care issues discussed by the board.

The Ohio Supreme Court has stated that the right to due process in an administrative proceeding is not limited to a simple right to have the hearing conform with the letter of applicable procedural regulations: "Regulatory commissions have been invested with broad powers within the sphere of duty assigned to them by law. Even in quasi-judicial proceedings their informed and expert judgment exacts and receives a proper deference from courts when it has been reached with due submission to constitutional restraints. * * * Indeed, much that they do within the realm of administrative discretion is exempt from supervision if those restraints have been obeyed. All the more insistent is the

need, when power has been bestowed so freely, that the inexorable safeguard * * * of a fair and open hearing be maintained in its integrity. * * * The right to such a hearing is one * * * assured to every litigant by the Fourteenth Amendment as a minimal requirement." *State ex rel. Ormet Corp. v. Indus. Comm.* (1990), 54 Ohio St.3d 102, 103, 561 N.E.2d 920, 922, quoting *Ohio Bell Tel. Co. v. Pub. Util. Comm. of Ohio* (1937), 301 U.S. 292, 304–305, 57 S.Ct. 724, 730–731, 81 L.Ed. 1093, 1101–1102. The crux of such a right to due process in an administrative proceeding is that "statutory procedural provisions aside, a requirement to conduct a 'hearing' implies a 'fair hearing.'" *Ormet, supra,* at 104, 561 N.E.2d at 922.

■ To support his claim that the board's decision to permanently revoke his license was not based upon his criminal conviction for fraudulent billing practices, but rather upon quality of patient care issues, appellant cites excerpts taken from the comments of various board members during the board's deliberations in appellant's case. The board's minutes, which are not verbatim, but nonetheless paraphrase the board's members' statements in detail, contains statements attributed to Dr. Heidt, an orthopedic surgeon, describing a number of unnecessary surgeries on different patients, or patients who in reality never received the procedures for which their insurance was billed. The board's minutes contain Heidt's comment that, as an orthopedic surgeon, he "finds that this is just extremely poor medicine. It's almost fraudulent medicine. It is extremely unfortunate that these matters did not come to the Board's attention prior to this time to save a lot of these other people from pain and suffering and inconsequential surgery." Heidt then moved to amend the proposed order to include a more severe sanction of permanent license revocation. Another board member, Dr. Garg, seconded the motion and stated that, beyond the overbilling charges, the unwarranted surgeries and lack of evidence of claimed surgery were "inexcusable and indefensible."

The minutes also contain statements by Dr. Buchan, who felt that the case should have been brought on standard of care, as well as billing practices, and felt that "the abuse is so grotesque that there is simply no other option" than permanent revocation.

The minutes also contain statements by Dr. Bhati, stating that the worst aspect of a patient care issue is that there was evidence that "totally disputed that any procedure was done on the patient. This is over and beyond thinking processes. This is just not acceptable." Bhati then stated that he felt that nothing other than permanent revocation was appropriate in this case.

On the face of these comments taken alone, it would appear that the board did in fact consider patient care issues, with which appellant was not charged. However, in examining these comments, we must consider the background of the

board's deliberation. Mr. Sinnott, a non-doctor member of the board, several times reminded the board that it was a case where only fraudulent billing practices and a felony conviction have been charged. Both Garg and Buchan then stated that the felony and upcoding issues alone supported the proposed permanent revocation. Buchan added that "in fact, his decisions and processes were based simply on the Hearing Examiner's findings of fact," which addressed only the billing and upcoding issues.

Furthermore, there is another aspect of the hearing before the board that could have influenced the board to disregard the hearing examiner's recommended sanction and impose a heavier penalty. It is apparent from the minutes of the meeting that appellant continued to downplay the severity of the charges against him, despite his guilty plea to federal felony charges. Appellant, in fact, characterized his federal felony conviction as merely arising out of a "billing dispute" between himself and the federal government. Under the medical board's disciplinary guidelines, aggravating circumstances can include dishonest or selfish motive, a pattern of misconduct, multiple violations, refusal to acknowledge wrongful nature of conduct, and adverse impact and misconduct on others. The stipulated facts in connection with appellant's felony conviction established, to some degree, each of these factors. While appellant argues that the board should have accepted the recommended penalty proposed by the hearing examiner, R.C. 119.09 specifically permits an agency to modify an order of a hearing examiner: "No such recommendation shall be final until confirmed and approved by the agency as indicated by the order entered on its record of proceedings, and if the agency modifies or disapproves the recommendations of the referee or examiner it shall include in the record of its proceedings the reasons for such modification or disapproval." The board minutes set forth in some detail the factors and evidence in the record that the board considered to be exacerbating, leading to modification of the proposed penalty.

■ In summary, we find that, despite the board's discussion of patient care issues with which appellant was not charged, viewed globally, the administrative hearing that lead to appellant's license revocation comported with the requirements of fairness and due process. Appellant was fully apprised of the violations with which he was charged, and was given a full opportunity to respond before an impartial board, satisfying due process. *Korn v. Ohio State Med. Bd.* (1988), 61 Ohio App.3d 677, 684, 573 N.E.2d 1100, 1104–1105. While patient care issues with which appellant was not charged, and which he therefore would not have had a full opportunity to respond to, were discussed by the board, there is sufficient, reliable, probative, and substantial evidence in the record that substantiates both the charges against appellant and the penalty imposed by the board to outweigh appellant's claims of prejudice from discussion of these patient care issues. See,

*e.g., Bouquett v. State Med. Bd. of Ohio* (1997), 123 Ohio App.3d 466, 474–475, 704 N.E.2d 583, 588–589. It should be pointed out that some of the observations of board members relating to patient care, are directly or indirectly related to the disciplinary charges considered by the board. And while fundamental notions of due process would be offended if the appellant were penalized for matters that were not charged, the evidence of appellant's misconduct is overwhelming and the board acted within its discretion and lawful authority in imposing the severe sanction of revocation. We therefore find that the Franklin County Court of Common Pleas did not err in finding that appellant's license revocation was supported by reliable, probative, and substantial evidence and in accordance with law. Appellant's first assignment of error is overruled.

Appellant's second assignment of error asserts that the trial court erred in refusing to admit as exhibits copies of board orders in other disciplinary actions by the board against similarly situated physicians. Appellant contends that these milder sanctions imposed by the board against physicians with felony convictions show disparate treatment in his case, and are evidence of bias and prejudice on the part of the board. It is unclear from the record why appellant attempted to introduce copies of these board orders as evidence or exhibits rather than simply argue them in his brief to the court of common pleas, as legal authority for his claim of disparate treatment by the board. Nonetheless, even if the court of common pleas improperly declined to admit the orders as exhibits, or to consider them as legal authority, appellant can show no prejudice from their exclusion by the court of common pleas. As noted by the court in its decision, R.C. 4731.22(B) requires the board to address each disciplinary matter on a case-by-case basis. The board has the authority to impose a wide range of sanctions pursuant to R.C. 4731.22, ranging from reprimand to revocation. The court of common pleas, in concluding that the board's order was supported by reliable, probative, and substantial evidence, was precluded from interfering with or modifying the penalty imposed if such penalty was authorized by law. *King v. State Med. Bd.* (Jan. 28, 1999), Franklin App. No. 98AP–570, unreported, 1999 WL 35500, citing *Henry's Cafe, Inc. v. Bd. of Liquor Control* (1959), 170 Ohio St. 233, 10 O.O.2d 177, 163 N.E.2d 678. The discretion thus granted to the board in imposing a wide range of potential sanctions reflects the deference due to the board's expertise in carrying out its statutorily granted authority over the practice of medical professions in Ohio, tailored to the particular circumstances of each case. As such, appellant was not prejudiced by the court of common pleas' refusal to consider superficially comparable cases with different outcomes, since those would not be probative of a lack of reliable, probative, and substantial evidence to support the order issued by the board in this case. Accordingly, appellant suffered no prejudice from the court of common pleas' refusal to admit

as exhibits, or consider as argument, the cases proffered. Appellant's second assignment of error is accordingly overruled.

In accordance with the foregoing, appellant's first and second assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas affirming the order of the State Medical Board of Ohio is affirmed.

*Judgment affirmed.*

LAZARUS, P.J., concurs.

PEGGY BRYANT, J., dissents.

PEGGY BRYANT, Judge, dissenting.

Being unable to agree with the majority opinion, I respectfully dissent. While I agree with the legal principles the majority applies in this case, my application of those principles to the facts yields a different result.

Beyond question, appellant, Wayne R. Clayman, D.P.M., was charged solely with publishing fraudulent statements in violation of R.C. 4731.22(B)(5), with obtaining money by fraudulent misrepresentations in the course of his practice in violation of R.C. 4731.22(B)(8), and with having pled guilty to a felony in violation of R.C. 4731.22(B)(9). Appellant was not charged with violating R.C. 4731.22(B)(6) for failure to conform to minimal standards of patient care. Nonetheless, as the board debated the appropriate course of action to be taken for appellant's admitted felony conviction arising from improper billing, the board specifically considered the patient care appellant rendered.

More particularly, Heidt reviewed a number of cases with the other board members during deliberations, noting nine or ten cases in which appellant had been the treating podiatrist. Of those cases, seven involved issues of patient care, not improper or fraudulent billing. The patient care issues typically arose in circumstances where appellant allegedly performed more surgery than necessary to treat the patient. Nothing in the records before the board suggested that appellant, even if overtreating the patient, billed for more than he performed in those instances. Finding that appellant's services were "just extremely poor medicine," and "almost fraudulent medicine," Heidt commented that it "is extremely unfortunate that these matters did not come to the Board's attention prior to this time to save a lot of these other people from pain and suffering and inconsequential surgery."

Immediately following his discussion of patient care, Heidt moved to amend the hearing officer's proposed order. While the hearing officer recommended that appellant's license be revoked, the revocation stayed and a suspension imposed,

Heidt moved that the proposed order be amended to permanently revoke appellant's license to practice medicine and surgery in the state of Ohio. In seconding the motion, Garg stated his reasons: although he stated that one matter involved overbilling, he also stated that there was evidence of unwarranted surgeries.

Apparently recognizing the thrust of the comments of both Heidt and Garg, Buchan stated that he "thinks this case should have taken a different tack. In that case, that tack could have been a situation of standard of care. There were patients, 14–year–olds, whose chief complaints were bunions, receiving tenotomies and capsulotomies. There were patients with ingrown toenails receiving this tenotomy and capsulotomy procedural code." Buchan further stated that "the Board revoked a license several months ago in a similar situation where tenotomies and capsulotomies were done, speaking directly to the standard of care issue."

Following that discussion, Sinnott, a lay board member, reminded the board that "this is a case where the Board charged fraudulent billing practices and felony conviction. There has been some discussion at the table today which has, understandably, brought into question the quality of care being provided." Assuring himself that the board would take into account only those sections charged, he noted that this "is not a quality of care case."

Thereafter, the board voted to permanently revoke appellant's license.

The record thus shows that the board considered quality-of-care issues in determining the appropriate sanction for appellant. Indeed, immediately following his discussion concerning quality-of-care issues, Heidt moved that the hearing officer's proposed sanction be modified to a permanent revocation. Garg specifically cited quality-of-care issues in seconding the motion. Buchan noted that in similar circumstances, permanent revocation had been imposed based on quality-of-care. While Sinnott astutely noted that the board's discussion had deviated from the charged violations, his statement that the board surely would consider only the charged offenses in its deliberations cannot erase the pointed consideration of quality of care issues the board discussed. Accordingly, I can conclude only that the board's sanction here is premised not only on the charged violations, but the board's genuine concern over the quality of care appellant rendered to his patients.

Moreover, I disagree with the majority's conclusion that appellant's undisputed felony conviction erases the due process violation. Unquestionably, appellant's felony conviction presents a basis for the board to sanction appellant; among the available sanctions is permanent revocation of his license. Nonetheless, to adopt the majority's position suggests that the board need only have evidence of a violation as charged, and then may consider, without notice to the practitioner,

any other violations it may happen to perceive. Given that the evidence of other uncharged violations appears to have affected the sanction the board imposed, I cannot agree that uncharged violations may be considered in deliberation.

More problematic is appellant's remedy. Typically, a case such as this would be remanded to the board for reconsideration of the evidence in the absence of quality of care issues. Given the intensity of the board's feelings about the quality of care appellant rendered to his patients, the board members' ability to exclude that issue from consideration in determining the appropriate sanction is at least questionable. Nonetheless, the board members are charged with administering their positions in compliance with applicable law, and thus I would return the matter to the board for consideration of the appropriate sanction based on evidence of violations as charged, excluding evidence of quality of care issues, unless the board chooses to begin again with a new statement of violations which raises not only appellant's billing practices but include issues of quality of care as well.

Accordingly, I would reverse the judgment of the common pleas court and remand this matter with instructions to return the matter to the board for further consideration.