OPINION
Appellant Ohio Department of Insurance appeals from the decision of the Mahoning County Common Pleas Court which reversed the decision of the Superintendent of Insurance concerning the revocation of appellee John Sprankle's license to sell insurance. The case arose in the trial court as an administrative appeal from the Superintendent's decision adopting a hearing officer's recommendation to revoke Mr. Sprankle's license. Six days after giving the Department of Insurance thirty days to file a brief, the court released its decision and noted that the Department of Insurance had failed to file a brief. The court found that the Superintendent's decision was not supported by reliable, probative and substantial evidence. The court then modified the sanction and imposed a one year license suspension rather than revocation. The Department of Insurance now points out that the court deprived it of the opportunity to be heard by releasing a decision prior to that set in the briefing schedule. The Department of Insurance also contends that the trial court abused its discretion in finding that the Superintendent's decision was not supported by sufficient evidence and acted contrary to law by modifying the sanction imposed upon Mr. Sprankle. For the following reasons, the trial court's decision is reversed as the Superintendent's decision to revoke Mr. Sprankle's license is affirmed.
 STATEMENT OF FACTS
In 1991, the Department of Insurance charged Mr. Sprankle with violating various sections of the revised code and the administrative code. The Department alleged that Mr. Sprankle induced clients to replace their life insurance policies with a policy he sold and misrepresented the terms, benefits and cost of the policy. Rather than contest the charges in a hearing, Mr. Sprankle signed a "consent agreement" in which he agreed to pay a fine and refrain from selling replacement policies for twelve years, at which time he could apply for termination of the restriction. The consent agreement provided that upon violation of the agreement, the Department has the right to institute proceedings to revoke, suspend, refuse to issue or renew any insurance license of Mr. Sprankle.
Nonetheless, in 1992, Mr. Sprankle sold a replacement life insurance policy to Thomas Komara. Although Mr. Sprankle blames it on software provided by the insurance company, the illustration of the replacement policy presented to Mr. Komara did not accurately reflect the policy being sold. Additionally, in completing Mr. Komara's application, Mr. Sprankle checked the "no" box next to the question asking if the policy was being sold to replace an existing policy. Mr. Sprankle also failed to comply with an administrative rule that requires agents to list all existing life insurance policies on a life insurance application.
In 1995, Mr. Sprankle sold a replacement life insurance policy to Milo Gibbs. Mr. Sprankle checked the "no" box after the question asking if the policy was replacing an existing policy both on the application, on a revised application and on a separate agent's report. In late 1995 and early 1996, Mr. Sprankle sold a replacement life insurance policy to Isaac Aston. Once again, the application, a revised application and an agent's report all stated that the policy was not being sold to replace an existing policy. The insurer did receive notice of the replacement though in a fund transfer sheet supplied by Mr. Sprankle as to these two clients. Eventually, all three clients complained to the insurance companies about their policies.
Pursuant to an original and then an amended notice of opportunity for hearing filed in March 1999, appellant was informed that the Department of Insurance sought to revoke his license due to seven counts. Counts I, V and VI stated that Mr. Sprankle violated the consent agreement by selling replacement insurance policies to the three clients. Count II alleged that he failed to accurately record the replacement information on Mr. Komara's application which constituted fraudulent and dishonest conduct in violation of R.C. 3905.49(A)(9). Count III alleged that he failed to notify the insurer that the policy he sold to Mr. Komara was a replacement policy as required by Ohio Adm. Code 3901-1-36 and R.C.3905.49(A)(3). Count IV alleged that the illustration provided to Mr. Komara constituted an incorrect, outdated and misleading misrepresentation in violation of R.C. 3901.21(A) and 3905.49(A)(8). Count VII noted that in the 1991 consent agreement the Department reserved the right to institute proceedings for violation of the agreement and to include in its consideration the conduct initially leading to that consent agreement.
The notice of hearing was later amended again in July 1999 to add count VIII which stated that Mr. Sprankle violated R.C. 3905.49(B)(9) due to the fact that his insurance license had been revoked by the State of Pennsylvania. Apparently, the Pennsylvania Insurance Commission wished to revoke Mr. Sprankle's Pennsylvania insurance license for 1997 and 1998 acts of commingling funds, misrepresenting the terms of policies, misrepresenting the financial condition of an insurance company and falsely advising twenty-five potential clients that their insurance agent was retiring. According to Mr. Sprankle, his Pennsylvania insurance license expired in January 1999. Rather than contest the charges at a hearing or attempt to renew his license, Mr. Sprankle entered into a "consent order" with the Pennsylvania Insurance Commission on March 31, 1999, whereby he refused to admit the truth of the charges but agreed not to contest the cease and desist order and his license revocation as he had no intention of selling insurance in Pennsylvania.[1]
An administrative hearing officer of the Ohio Department of Insurance conducted a hearing in August 1999. On January 21, 2000, the hearing officer issued a report recommending that Mr. Sprankle's license be revoked. Mr. Sprankle filed objections, which the Superintendent overruled on May 5, 2000. This entry accepted the hearing officer's findings and recommendation to revoke Mr. Sprankle's license. Thereafter, appellant filed an administrative appeal and complaint in the trial court.
Apparently, the case was being submitted on briefs as neither party sought a hearing as suggested in preliminary scheduling orders. The briefing schedule signed by the court on October 16, 2000, required Mr. Sprankle to file his brief on October 15, the Department of Insurance to file a brief thirty days later, and Mr. Sprankle to file a reply seven days after that. Mr. Sprankle filed his brief on October 17. On November 22, the court signed an agreed judgment entry which gave the Department of Insurance until December 15 to submit its brief. Nevertheless, on December 1, the court released a judgment entry which noted that the Department of Insurance failed to file a brief as of November 28.
The court's December 1, 2001 entry found that Mr. Sprankle sold the three replacement policies as alleged and conceded. The court noted that the three complainants were not at the administrative hearing. The court stated that Mr. Sprankle was advised by an attorney that he need not fight the Pennsylvania disciplinary action as his license had expired. The court opined that the Ohio Department of Insurance's decision to revoke Mr. Sprankle's license appears to be based on the Pennsylvania revocation. The court asked, "how does one revoke a non-existing license?" The court then held that the order of the Department of Insurance revoking Mr. Sprankle's license is not supported by reliable, probative and substantial evidence. The court found that, although Mr. Sprankle violated the 1991 consent agreement, his actions were motivated by the interests of his clients and opined that the clients did not suffer harm. Finally, the court modified the order of the Superintendent and suspended Mr. Sprankle's license for one year, from January 21, 2000 through January 20, 2001. The Department of Insurance filed the within timely appeal.
 ASSIGNMENT OF ERROR NUMBER ONE
The Department of Insurance sets forth two assignments of error, the first of which provides:
 "THE COURT OF COMMON PLEAS OF MAHONING COUNTY ABUSED ITS DISCRETION BY CONCLUDING THAT THE DEPARTMENT OF INSURANCE'S ORDER WAS NOT SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE AND FURTHER ERRED AS A MATTER OF LAW BY MODIFYING THE SANCTION IMPOSED IN DIRECT CONTRAVENTION OF HENRY'S CAFÉ, INC., BOARD OF LIQUOR CONTROL (1959), 170 OHIO ST. 233."
Relevant to the charges levied against Mr. Sprankle, the Superintendent of Insurance may suspend, revoke, or refuse to renew or issue an agent's license for the following reasons: the agent violates an insurance law or rule (such as failing to provide notice that a new policy is replacing an existing policy) or order of the superintendent (such as the 1991 consent agreement whereby Mr. Sprankle agreed to refrain from selling replacement policies) or the commissioner of insurance of another state; the agent is guilty of an unfair or deceptive trade act practice or fraud under Title 39 which includes making an illustration that misrepresents the terms of a policy; the agent used fraudulent, coercive, or dishonest practices, or is untrustworthy; or the agent's insurance license is suspended or revoked in any other state. R.C. 3901.21(A); 3905.49(A)(3),(8),(9); 3905.49(B)(9) (as amended after Mr. Sprankle's Pennsylvania consent order was issued); Ohio Adm. Code 3901-1-36.
The Superintendent has discretion when choosing a sanction after finding a violation occurred. R.C. 3905.49(A) and (D); 3905.49(B) (as amended). In exercising this discretion, the Superintendent may consider the following factors in mitigation: good faith of the agent, extent of restitution, actual or potential harm; degree of trust and vulnerability of clients; previous action against the agent; number of victims; acceptance of responsibility and voluntary reporting of the violations; cooperation in investigation and efforts to conceal; and other factors.
After the Superintendent issues its order suspending or revoking a license, the party adversely affected may file an administrative appeal to the court of common pleas. The court may affirm the order if it finds, upon consideration of the entire record and any additional newly discovered evidence that the court admits, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law. R.C.119.12.
If the agency then appeals the decision of the trial court to the appellate court, the appeal shall be taken on questions of law relating to constitutionality, construction, and interpretation of statutes and rules of the agency and on the correctness of the judgment of the trial court that the order of the agency is not supported by any reliable, probative, and substantial evidence in the entire record. R.C. 119.12. Although from reading the statute it appears that the appellate court conducts the same review as the trial court if no new evidence was presented to the trial court, it is typically noted that the appellate court's review is more limited than that of the trial court. Pons v. OhioState Med. Bd. (1993), 66 Ohio St.3d 619, 621. Specifically, our standard of review is whether the trial court abused its discretion in determining that the agency's order is not supported by reliable, probative, and substantial evidence. Kennedy v. Marion Correctional Inst. (1994),69 Ohio St.3d 20, 21-22.
As the trial court conducts its review and as this court reviews the decision of the trial court, it must be remembered that an agency's findings of fact are presumed to be correct and must be given due deference. VFW Post 8586 v. Ohio Liquor Control Comm. (1998),83 Ohio St.3d 79, 81. The agency, particularly the hearing officer who heard the live testimony, is best able to observe the demeanor of the witnesses and then weigh their credibility. Brown v. Ohio Bur. Of Emp.Serv. (1994), 70 Ohio St.3d 1, 2; Leon v. Ohio Bd. Of Psych. (1992),63 Ohio St.3d 683, 688.
Moreover, the trial court is not empowered to modify a sanction where the court determines that the alleged violations were committed by the licensee but believes that the agency abused its discretion as the penalty is too harsh. In Henry's Café, Inc. v. Board of LiquorControl (1959), 170 Ohio St.3d 233, the agency revoked the licensee's liquor permit for acts of gambling and disorderly conduct. The trial court agreed that gambling and disorderly conduct occurred but found extenuating circumstances existed and held that a forty-five day license suspension would be more appropriate. The Supreme Court held that the trial court had no jurisdiction to modify a penalty where the order finding violations was supported by reliable, probative, and substantial evidence. Id. at 236-237.
The trial court's function is to determine if the licensee's rights were observed and if there is sufficient evidence of wrongdoing.Department of Liquor Control v. Santucci (1969), 17 Ohio St.2d 69,70-71. Upon these findings, the court may not modify penalties that are within the agency's power to assess. Id. See, also, Zollinger v. OhioState Racing Comm. (1999), 133 Ohio App.3d 708, 714; Clayman v. StateMed. Bd. Of Ohio (199), 133 Ohio App.3d 122, 129.
Following these standards of review, we find that the trial court abused its discretion in finding the Superintendent's order was not supported by reliable, probative, and substantial evidence. First of all, Mr. Sprankle conceded that he sold three replacement policies as charged in violation of the 1991 consent agreement. The consent agreement specifically advised Mr. Sprankle that violation by selling replacement policies could result in revocation of his license. Moreover, R.C.3905.49(A)(3) allows the Superintendent to revoke a license for violating a consent agreement.
Secondly, Mr. Sprankle failed to give notice to the insurance company that the policy he sold to Mr. Komara was replacing an existing policy. Pursuant to R.C. 3905.49(A)(3) and Ohio Adm. Code 3901-1-36, this practice can provide grounds for the Superintendent to sanction the violator. It also provides grounds under R.C. 3905.49(A)(9) as checking the wrong box on the application and failing to list existing insurance can be considered fraudulent or dishonest conduct demonstrating that Mr. Sprankle is untrustworthy.
Thirdly, Mr. Sprankle admits that the illustration he provided to Mr. Komara was a misrepresentation of the policy actually sold to Mr. Komara. Although Mr. Sprankle blames this misrepresentation on company software, the hearing officer was entitled to find that appellant's excuse was not credible, especially in light of the fact that an insurance company representative testified that the agent must enter the correct annual outlay to generate an accurate illustration. (Tr. 39). The provision of a misrepresentation such as this to induce the purchase of insurance constitutes grounds for the Superintendent to sanction the violator under R.C. 3901.21(A) and 3905.49(A)(8).
Finally, Mr. Sprankle entered a consent order in Pennsylvania in March 1999 which stated that his license was revoked. Under R.C. 3905.49(B)(9), grounds for sanction is provided by having a license suspended or revoked in another state. Mr. Sprankle claims that regardless of the language of the Pennsylvania consent order signed by him, his Pennsylvania license was not actually revoked because he let it expire in January 1999.
As the Department of Insurance points out, if this were a valid argument, then anyone with pending charges in another state could delay their case until their license expires, fail to renew the license, have a revocation sanction rendered in the other state pursuant to a signed consent order which contains a provision that the violator does not admit the allegations, and then claim to Ohio that his license was not actually revoked because he did not have one to revoke. This is an unconscionable result. Moreover, revocation is defined as the termination of authority to hold a license rather than merely the termination of the license. R.C. 3905.49(A)(3). Thus, an agency can revoke, i.e. terminate the authority to hold, a license even if that license has expired.
Regardless, the Superintendent had the discretion to revoke Mr. Sprankle's license on multiple charges. A finding of reliable, probative, and substantial evidence on any one constitutes sufficient grounds for revocation. The hearing officer listened to the testimony and reviewed the evidence and the laws and determined that sufficient evidence supported multiple reasons for revoking Mr. Sprankle's license. The Superintendent agreed.
The trial court abused its discretion by substituting its judgment on credibility determinations. As the case law forbids a court from modifying penalties, the court also abused its discretion by agreeing that Mr. Sprankle sold three replacement policies in violation of the consent agreement and the law but then determining that he only deserved a one year suspension.
Even if the court were permitted to find a violation but modify the penalty of the agency, the court's modification appears unreasonable. The consideration of mitigating factors for determining punishment as outlined supra is a matter for the Superintendent. Contrary to Mr. Sprankle's argument, the hearing officer and subsequently the Superintendent could properly find insufficient mitigating factors. The court stated that the three clients were not harmed by Mr. Sprankle's violation of the consent agreement. However, as the hearing officer noted, the clients no longer possess their old life insurance policies. The hearing officer also noted that they also lost the benefit of freedom from contestability which they previously had due to the length of time their old policies had been in effect. Mr. Sprankle focuses on the fact that premiums were refunded; however, testimony established that the premiums paid by Mr. Gibbs were not refunded. Moreover, the consideration is actual or potential harm.
Finally, the lack of harm is just one consideration in determining punishment. The hearing officer and Superintendent were within their discretion to consider, among other things, the fact that Mr. Sprankle violated a 1991 consent agreement entered in Ohio, he claimed that it was his fiduciary duty to violate the consent order and sell replacement policies, he acknowledged that an accountant referred one of the clients to him specifically for replacement insurance and he accepted the client because he desired to satisfy the accountant who could provide him with future referrals, he had been sanctioned in Pennsylvania three times, he was charged with violations concerning three clients, he had his wife submit an application for him even though he was the soliciting agent, he further attempted to conceal his violations by failing to mark the correct boxes on applications and list the existing policies, and he placed blame on the clients and the software. Therefore, this assignment of error is sustained.
 ASSIGNMENT OF ERROR NUMBER TWO
The Department of Insurance's second assignment of error provides:
 "THE TRIAL COURT COMMITTED REVERSIBLE ERROR AS A MATTER OF LAW BY NOT AFFORDING THE DEPARTMENT AN OPPORTUNITY TO BE HEARD."
The court inadvertently issued a judgment entry in favor of Mr. Sprankle six days after giving the Department of Insurance thirty days to file its brief. Due to the resolution of the prior assignment, this assignment need not be addressed more than to point out the error.
For the foregoing reasons, the trial court's judgment is reversed, and the Superintendent's order revoking the license of John Sprankle to sell insurance is reinstated.
WAITE, J. and DeGENARO, J., concurs.
[1] Mr. Sprankle had previously entered into a consent order with the Pennsylvania Insurance Commission in 1986 which alleged that he sold insurance without a license from 1982-1984, engaged in unfair and deceptive business acts, misrepresented his affiliation to potential clients in order to induce them to buy replacement life insurance and trained other sub-agents to do the same. In this order, he was fined $5,000, ordered to cease and desist his actions, and notified that if he ever received a license in Pennsylvania it was subject to revocation upon violation of the terms of the order. He also entered into a "settlement agreement" with the Pennsylvania Insurance Commission in 1989 after violating the cease and desist paragraph of the 1986 consent order. Pursuant to this settlement agreement, Mr. Sprankle's license was revoked. He apparently was granted licensure by the Pennsylvania Insurance Commission at some point after this in order to have it revoked again in 1999.