OPINION
{¶ 1} Plaintiff-appellant, Jack Edward Slinghuff, D.O. ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas which affirmed an order of defendant-appellee, State Medical Board of Ohio (the "board"), suspending appellant's license to practice osteopathic medicine and surgery for one year.
 {¶ 2} The disciplinary proceeding against appellant originally stemmed from his guilty plea in federal court to one misdemeanor count of introduction or delivery for introduction into interstate commerce of 30 vials of Laetrile, an unapproved new drug,[1] to be shipped from West Palm Beach, Florida, to Salem, Ohio, in violation of Sections 331(d), 355(a), and 333(A)(1), Title 21, U.S.Code. As a result of his federal misdemeanor conviction, the board charged appellant with "[s]elling, giving away, personally furnishing, prescribing, or administering drugs for other than legal and legitimate therapeutic purposes or a plea of guilty to, a judicial finding of guilt of, or a judicial finding of eligibility for intervention in lieu of conviction of, a violation of any federal or state law regulating the possession, distribution, or use of any drug" in violation of R.C. 4731.22(B)(3), and with having pled guilty to a misdemeanor, a violation of R.C. 4731.22(B)(11). Appellant was not charged with any violation of R.C.4731.22(B)(6), failure to conform to minimal standards of patient care.
 {¶ 3} The board's charges against appellant were first addressed in an evidentiary hearing before an attorney-hearing examiner, who subsequently issued a report and recommendation containing findings of fact and conclusions of law. Therein, the hearing examiner concluded that appellant's felony misdemeanor conviction constituted a violation of both R.C. 4731.22(B)(3) and (11), and recommended to the board that appellant's license be suspended for 30 days, with the suspension stayed subject to certain probationary terms and conditions.
 {¶ 4} Appellant did not file objections to the hearing examiner's report and recommendation, and the board subsequently convened to consider appellant's case. At the hearing before the board on November 10, 2004, appellant appeared, represented by counsel, and addressed the board, as did the attorney general's office. The minutes of the subsequent discussion by the board reflect that the board discussed appellant's case in connection with his federal misdemeanor conviction, as well as various allegations that appellant's use of Laetrile failed to conform to the minimal standards of patient care. The board subsequently adopted the hearing examiner's findings of fact and conclusions of law, but disregarded the hearing examiner's recommendation as to penalty, and, instead, suspended appellant's license for one year, subject to probationary terms and conditions for a period of at least a year.
 {¶ 5} Appellant then appealed to the Franklin County Court of Common Pleas pursuant to R.C. 119.12. On August 4, 2005, the court of common pleas rendered its decision affirming the board's order as supported by reliable, probative, and substantial evidence, and in accordance with law.
 {¶ 6} Appellant has timely appealed from the decision of the court of common pleas, and brings the following two assignments of error:
[1.] THE COURT OF COMMON PLEAS ABUSED ITS DISCRETION IN UPHOLDING THE MEDICAL BOARD'S ORDER TO SUSPEND DR. SLINGHUFF'S LICENSE FOR ONE YEAR BASED ON THE FACT THAT THE MEDICAL BOARD CONSIDERED EVIDENCE THAT WAS NOT IN THE RECORD AS A BASIS TO MODIFY THE RECOMMENDATION AND THEREBY VIOLATED DR. SLINGHUFF'S RIGHT TO DUE PROCESS OF LAW.
[2.] THE COURT OF COMMON PLEAS ERRED IN UPHOLDING THE MEDICAL BOARD'S ORDER TO SUSPEND DR. SLINGHUFF'S LICENSE WHEN THE DECISION OF THE MEDICAL BOARD WAS NOT BASED ON RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE.
 {¶ 7} In an administrative appeal, pursuant to R.C. 119.12, the trial court reviews an order to determine whether it is supported by reliable, probative, and substantial evidence, and is in accordance with the law. In applying this standard, the court must "give due deference to the administrative resolution of evidentiary conflicts." University of Cincinnati v. Conrad
(1980), 63 Ohio St.2d 108, 111.
 {¶ 8} The Supreme Court of Ohio has defined reliable, probative, and substantial evidence as follows:
* * * (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value.
(Footnotes omitted.) Our Place, Inc. v. Ohio Liquor ControlComm. (1992), 63 Ohio St.3d 570, 571.
 {¶ 9} On appeal to this court, the standard of review is more limited. Unlike the court of common pleas, a court of appeals does not determine the weight of the evidence. Rossford ExemptedVillage School Dist. Bd. of Edn. v. State Bd. of Edn. (1992),63 Ohio St.3d 705, 707. In reviewing the court of common pleas' determination that the board's order was supported by reliable, probative, and substantial evidence, this court's role is limited to determining whether the court of common pleas abused its discretion. Roy v. Ohio State Med. Bd. (1992),80 Ohio App.3d 675, 680. The term abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. However, on the question of whether the board's order was in accordance with the law, this court's review is plenary. University Hosp., Univ. ofCincinnati College of Medicine v. State Emp. Relations Bd.
(1992), 63 Ohio St.3d 339, 343.
 {¶ 10} With the appropriate standard of review in place, we now turn to the merits of the appellant's assignments of error. For ease of analysis, we will address appellant's assignments of error together, as they present inextricably related questions.
 {¶ 11} The first question that must be answered is whether the trial court erred in concluding the board's order was supported by reliable, probative, and substantial evidence. In this case, appellant pled guilty in federal court to one misdemeanor count of introduction or delivery for introduction into interstate commerce of 30 vials of Laetrile, an unapproved new drug, in violation of Sections 331(d), 355 (a), and 333 (A)(1), Title 21, U.S.Code. The board determined appellant's conviction fell within the ambit of R.C. 4731.22(B)(3) and (11), which provides as follows:
(3) Selling, giving away, personally furnishing, prescribing, or administering drugs for other than legal and legitimate therapeutic purposes or a plea of guilty to, a judicial finding of guilt of, or a judicial finding of eligibility for intervention in lieu of conviction of, a violation of anyfederal or state law regulating the possession, distribution, oruse of any drug;
* * * *
(11) A plea of guilty to, a judicial finding of guilt of, or a judicial finding of eligibility for intervention in lieu of conviction for, a misdemeanor committed in the course of practice[.] * * *
(Emphasis added.)
 {¶ 12} At the onset, we note that appellant does not challenge the board's conclusion that his federal misdemeanor conviction constituted a violation of R.C. 4731.22(B)(11). On this basis alone, we conclude that the trial court did not err when it determined the board's order was supported by reliable, probative, and substantial evidence. See, e.g., Smith v. StateMed. Bd. (Mar. 21, 2002), Franklin App. No. 01AP-863; Herman v.Ohio State Med. Bd. (Nov. 28, 2000), Franklin App. No. 99AP-967;Davidson v. State Med. Bd. (May 7, 1998), Franklin App. No. 97APE08-1036. In fact, the only argument advanced by appellant on appeal is that because there was no evidence "presented by the State to prove that Laetrile is illegal to possess, prescribe or administer by licensed physicians[,]" his conviction does not run afoul of R.C. 4731.22(B)(3). This argument, however, rings hollow when viewed against the clear and unambiguous language of that subsection, for indeed, if this court were to accept appellant's argument, then the second part of R.C. 4731.22(B)(3) (italicized above) would have no effect.
 {¶ 13} Having concluded that the board's order was supported by reliable, probative, and substantial evidence, analysis proceeds to determine whether the penalty imposed by the board, which exceeded that recommended by the hearing examiner, is in accordance with law.
 {¶ 14} Pursuant to R.C. 119.09, an agency is permitted to modify an order of a hearing examiner. That statute provides, in pertinent part:
* * * The recommendation of the referee or examiner may be approved, modified, or disapproved by the agency, and the order of the agency based on such report, recommendation, transcript of testimony and evidence, or objections of the parties, and additional testimony and evidence shall have the same effect as if such hearing had been conducted by the agency. No such recommendation shall be final until confirmed and approved by the agency as indicated by the order entered on its record of proceedings, and if the agency modifies or disapproves therecommendations of the referee or examiner it shall include inthe record of its proceedings the reasons for such modificationor disapproval.
(Emphasis added.) We have previously held that this statute is complied with when the minutes of the board reveal the reasons for modifying a hearing examiner's recommendation. Feldman v.State Med. Bd. (Sept. 30, 1999), Franklin App. No. 98AP-1627.
 {¶ 15} In this case, the hearing examiner recommended that the board suspend appellant's license for 30 days, with the suspension stayed subject to certain probationary terms and conditions. The hearing examiner stated the reasons and rationale underlying her recommendation, explaining:
Dr. Slingluff's misdemeanor drug conviction is based upon conduct that was motivated by his desire to help patients, rather than financial gain. Dr. Slingluff appears to be a compassionate physician who administered Laetrile for no other reason other than that he believes that it is beneficial to cancer patients.
Further, Dr. Slingluff testified that he had not knowingly engaged in any illegal activity, and that he has not administered Laetrile since he learned of the criminal investigation. He stated that, had the authorities simply asked him to cease his conduct, he would have done so. Dr. Slingluff does not seem to be a physician who will defy the law because he disagrees with it. Indeed, he testified that he will not administer Laetrile again unless he becomes involved in a government sponsored research project or unless Laetrile is approved by the FDA. For all of these reasons, minimal discipline is appropriate.
(Report and recommendation in the matter of Jack E. Slinghuff, D.O., Oct. 13, 2004, at 12.)
 {¶ 16} Appellant asserts that the board violated fundamental principles of fairness and due process at his hearing by addressing issues related to patient care, with which appellant had not been charged. Thus, it is appellant's position that the severity of the sanction imposed by the board, which exceeded that recommended by the hearing examiner, was necessarily based on the prejudicial effect of these patient care issues discussed by the board.
 {¶ 17} To support his claim that the board's decision to suspend his license was not based upon his federal conviction, appellant cites excerpts taken from the comments of various board members during the board's deliberations in appellant's case. The board's minutes, which are not verbatim, but nonetheless paraphrase the board's members' statements in detail, contains statements attributed to Dr. Egner as describing appellant as a physician who "blatantly practices what he thinks is a form of medicine that is outlawed." (Minutes at 4.) The board's minutes also contain Dr. Egner's comments that "[t]his case is about using a substance that has been banned," and "[t]his should have been a minimal standards case * * *." Id. at 4-5. In fact, Dr. Egner moved to amend the proposed order by substituting an order of permanent revocation, and Dr. Bhati seconded the motion.
 {¶ 18} The minutes also contain statements by Dr. Kumar, who agreed with Dr. Egner. Dr. Kumar criticized appellant's use of Laetrile and vitamin therapy as treatment modalities for cancer patients, as such are not the standard of care, and accused appellant of "taking advantage of the most vulnerable people in society, who are afraid of cancer." Id. at 5.
 {¶ 19} The minutes also contain statements made by various board members who referred to Laetrile as being illegal, which appellant contends, the state failed to establish.
 {¶ 20} On the face of these comments taken alone, it would appear that the board did in fact consider patient care issues, with which appellant was not charged. However, in examining these comments, we must consider the background of the board's deliberation. While it is true that Dr. Egner expressed her opinion that appellant's case "should have been a minimal standards case," she went on to state that "it doesn't really matter. There was a federal conviction of a crime for using a drug that has been banned." Id. at 5. Thus, Dr. Egner clarified her position that the decisive factor for consideration was appellant's conviction. Likewise, Dr. Buchan, who spoke against revocation, reminded the board "the fact remains that [appellant] was using a banned or illegal substance." Id. at 7. When considered in context, it is clear that Dr. Buchan was reminding the board that appellant's federal misdemeanor conviction, and not the controversy surrounding the use of Laetrile, was the definitive issue at hand. Dr. Steinbergh also stressed that appellant came before the board "because of his conviction of a drug-related misdemeanor. That's the charge today." Id. at 11. Although the board discussed, at times, the charges against appellant in relation to the standard of care, the minutes reflect that the board based its decision to impose a harsher penalty because of his violations of R.C. 4731.22(B)(3) and (11). To that end, while appellant is correct in asserting that the board discussed issues outside the scope of R.C. 4731.22(B)(3) and (11), intellectual honesty demands we acknowledge that issues relating to the requisite standard of care cannot be completely divorced from appellant's statutory violations. This is especially true when considering the nature of appellant's conviction, which involved appellant's treatment of patients with an unapproved drug. Thus, contrary to appellant's position, the record does not support the conclusion that the board's consideration of patient care issues served as the motivating force behind its decision to modify the hearing examiner's recommendation as to penalty.
 {¶ 21} We also note there was another aspect of the hearing before the board which could have influenced its decision to disregard the hearing examiner's recommended sanction and impose a heavier penalty. The record discloses that appellant was investigated by the board in the 1980s regarding his use of Laetrile, but for reasons not clear from the record, he was not charged with any violation. Comments made by several board members suggest their dismay with appellant, who was before them again regarding the same conduct, despite having previously received a "free pass."
 {¶ 22} In Clayman v. State Med. Bd. of Ohio (1999),133 Ohio App.3d 122, a case factually similar to the case sub judice, we found that:
* * * [D]espite the board's discussion of patient care issues with which appellant was not charged, viewed globally, the administrative hearing that lead to appellant's license revocation comported with the requirements of fairness and due process. Appellant was fully apprised of the violations with which he was charged, and was given a full opportunity to respond before an impartial board, satisfying due process. Korn v. OhioState Med. Bd. (1988), 61 Ohio App. 3d 677, 684. While patient care issues with which appellant was not charged, and which he therefore would not have had a full opportunity to respond to, were discussed by the board, there is sufficient, reliable, probative, and substantial evidence in the record that substantiates both the charges against appellant and the penalty imposed by the board to outweigh appellant's claims of prejudice from discussion of these patient care issues. See, e.g.,Bouquett v. State Medical Bd. of Ohio (1997),123 Ohio App. 3d 466, 474-475. It should be pointed out that some of the observations of board members relating to patient care, are directly or indirectly related to the disciplinary charges considered by the board. And while fundamental notions of due process would be offended if the appellant were penalized for matters that were not charged, the evidence of appellant's misconduct is overwhelming and the board acted within its discretion and lawful authority in imposing the severe sanction of revocation. * * *
Id. at 128-129.
 {¶ 23} We reach the same result here. While the position of this court is more in line with the rationale articulated by the hearing examiner, that fact is of no consequence. The Supreme Court of Ohio has held that "the fact that the court of appeals, or this court, might have arrived at a different conclusion then did the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." Lorain City Bd. of Edn. v. State Emp. Relations Bd.
(1988), 40 Ohio St. 3d 257, 261. In this case, the board minutes, when viewed as a whole, set forth in some detail the factors and evidence in the record which the board considered to be exacerbating, leading to modification of the proposed penalty. As such, the trial court did not abuse its discretion in finding that "there is sufficient, reliable, probative, and substantial evidence in the record that substantiates both the charges against appellant and the penalty imposed by the board to outweigh appellant's claims of prejudice from discussion of these patient care issues." Clayman, supra, at 128.
 {¶ 24} Based on the foregoing, appellant's first and second assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas affirming the order of the State Medical Board of is affirmed.
Judgment affirmed.
Klatt, P.J., and Petree, J., concur.
[1] According to the National Cancer Institute (NCI), a component of the National Institutes of Health (NIH):
Laetrile is a compound that has been used as an anticancer treatment in humans worldwide. It is not approved by the US Food and Drug Administration (FDA) as a treatment for cancer or any other medical condition. The term "laetrile" comes from 2 words (laevorotatory and mandelonitrile) and is used to describe a purified form of the chemical amygdalin. Amygdalin is a plant compound that contains sugar and produces cyanide. Cyanide is believed to be the active cancer-killing ingredient in laetrile. Amygdalin is found in the pits of many fruits and in raw nuts. It is also found in other plants such as lima beans, clover, and sorghum.
http://www.cancer.gov/cancertopics/pdq/cam/laetrile/Patient.