KORN, Appellee and Cross–Appellant,

v.

**OHIO STATE MEDICAL BOARD, Appellant and Cross–Appellee.**

[Cite as *Korn v. Ohio State Medical Bd.* (1988), 61 Ohio App.3d 677.]

Court of Appeals of Ohio,
Franklin County.

No. 88AP–262.

Decided Nov. 22, 1988.

678

*Martin & Eichenberger* and *Stephen D. Martin*, for appellee and cross-appellant.

*Anthony J. Celebrezze, Jr.*, Attorney General, and *Christopher M. Culley*, for appellant and cross-appellee.

---

McCormac, Judge.

The Ohio State Medical Board, appellant, appeals the decision of the Franklin County Court of Common Pleas, which affirmed in part and reversed in part the board's decision to revoke the license of appellee, Dr. David C. Korn, to practice osteopathic medicine and surgery in the state of Ohio. Dr. Korn cross-appeals.

On May 13, 1985, Dr. Korn was notified that the board proposed that disciplinary action be taken against him because he was "unable to practice medicine according to acceptable and prevailing standards of care by reason of illness, excessive use of alcohol, excessive use of controlled substances, drugs, or chemicals, or as a result of a mental or physical condition, in violation of Section 4731.22(B)(15), Ohio Revised Code." This notice was later amended to include the following charges: (1) that between January 28, 1985 and March 25, 1985, the doctor had abandoned his practice; (2) that from June 3, 1985 onward he had again abandoned his practice; and (3) that he had admitted to a medical board investigator that, while he lived in Chicago between 1973 to 1980, he had injected himself with Demerol, which is a controlled substance.

On June 7, 1985, Dr. Korn requested a hearing concerning the original charges. After the hearing, the board ordered that the doctor's Ohio license should be revoked, but that his revocation be stayed subject to a probationary period of five years, upon certain terms and conditions which included: involvement in a drug rehabilitation program, abstinence from personal use or possession of drugs, psychiatric treatment, submission to blood or urine specimens' analysis, and surrender of his United States Drug Enforcement Administration Certificate for one year.

The doctor appealed this decision to the common pleas court, which affirmed to the extent that it found a violation of R.C. 4731.22(B) when Dr. Korn left his practice between approximately January 28, 1985 to March 25, 1985. It reversed the board's decision that the doctor had allegedly abused illegal drugs and, thus, violated R.C. 4731.22(B)(3).

The board appeals, asserting the following assignment of error:

"The Court of Common Pleas erred as a matter of law in concluding that the State Medical Board could not take disciplinary action on the basis of conduct occurring prior to Ohio licensor [*sic*]."

Dr. Korn cross-appeals, asserting the following two assignments of error:

"I. The lower court erred in finding that Appellant–Cross Appellee did not fail to provide Appellee–Cross Appellant with his statutory and due process rights in regards to Appellant–Cross Appellee's conduct at the hearing and, as a result of said finding of no failure by Appellee–Cross Appellant, the lower court erred in not reversing and vacating the order of Appellee–Cross Appellant.

"II. The lower court erred in finding a violation of Ohio Rev.Code § 4731.-22(B)(6) and (14)."

On January 28, 1985, Dr. Korn received a phone call at his medical office, which upset him, and he left the office around 2:30 p.m. He did not leave a phone number where he could be reached, although he told his office manager to "take care of it." Another doctor, Dr. Bescak, who worked part-time for Dr. Korn, was to come into the office at 3:00 p.m. that day. The office manager called a person who acted as Dr. Korn's financial consultant and asked him what she should do since the other doctor had not arrived. The financial consultant told her to send ill patients to the emergency room, patients with heart problems to Dr. Bescak's office, and to reschedule diet patients. She called up patients and rescheduled their appointments.

Dr. Korn's practice was closed for only one day, Tuesday, January 29, 1985, and no surgeries were scheduled for that day. From January 28, 1985 to March 22, 1985, three doctors worked part-time in Dr. Korn's office. During this time, the office manager testified that the business was basically normal.

At his hearing, Dr. Korn testified that, in Chicago prior to 1980, he had self-administered Demerol. Although the Demerol was not prescribed by a treating physician, Dr. Korn claimed that he took it for migraine headaches, though a board investigator testified that Dr. Korn told him he took it to relax.

The board argues in its assignment of error that the court of common pleas erred as a matter of law when it concluded that it could not take disciplinary action against Dr. Korn based on his conduct prior to the time when he was licensed in Ohio.

The board argues that it has jurisdiction, which is granted under R.C. 4731.22, to revoke the license of a doctor under conditions stipulated in that provision, *i.e.*, R.C. 4731.22(B)(3), which states that the board may revoke a doctor's certificate if the doctor sells, prescribes, or administers drugs for

other than legal and legitimate therapeutic purposes. The board argues that the actual location and time of the acts are irrelevant in a jurisdictional analysis.

The common pleas court found that R.C. 4731.22(B)(3) does not apply in this case since it is limited by R.C. 4731.36, which allows the board to consider only the practice of medicine within the state of Ohio.

We assume that the common pleas court was referring to the part of R.C. 4731.36, which states, in pertinent part:

"(A) Sections 4731.01 to 4731.47 of the Revised Code * * * shall not apply * * * to a physician or surgeon residing in another state or territory who is a legal practitioner of medicine or surgery therein, when in *consultation* with a regular practitioner of this state; nor shall such sections apply to a physician or surgeon residing on the border of a neighboring state and authorized under the laws thereof to practice medicine and surgery therein, whose *practice extends* within the limits of this state[.] * * * " (Emphasis added.)

█ This statute exempts out-of-state physicians who are acting as consultants and border-state practitioners from the effects of R.C. 4731.01 to 4731.47. Therefore, R.C. 4731.22(B)(3) applies to Ohio certified doctors practicing in Ohio. Nothing in the wording of R.C. 4731.22(B)(3) limits the board to consider only Ohio illegal sales or administration of drugs by a doctor certified in Ohio.

Since Dr. Korn is an Ohio-certified doctor practicing in Ohio, R.C. 4731.22(B)(3) applies to him and any illegal drug administration by Dr. Korn would be a violation of R.C. 4731.22(B) and (C).

However, the trial court found that there is no evidence from the record showing that Dr. Korn was currently in, or had previously been in, violation of any other state's law regarding improper drug use or illegal substance abuse.

The standard of review of a decision of the board, which is an administrative agency, is to determine if the decision of the board is "supported by reliable, probative, and substantial evidence and is in accordance with law." R.C. 119.12; *Harris v. Lewis* (1982), 69 Ohio St.2d 577, 23 O.O.3d 485, 433 N.E.2d 223.

█ After reviewing the record, we find that there is no reliable, substantial, or probative evidence that the doctor violated any other state's drug laws. Dr. Korn testified that he self-prescribed Demerol for his migraine headaches. Colonel Hunter, an investigator of the board, testified that Dr. Korn told him that he took Demerol to relax. Since there was no evidence in the record concerning whether Demerol might be used by a physician for migraine pain, whether taking Demerol to relax is a way to relieve migraine pain, or whether

a doctor can prescribe medicine for himself, there is no evidence that Dr. Korn violated any drug laws.

The board relies on a Kentucky case, *Kentucky Bar Assn. v. Signer* (Ky.1976), 533 S.W.2d 534, which concluded that disciplinary action could be taken against a Kentucky licensee whose misconduct occurred in Ohio prior to Kentucky licensure. The Kentucky court stated that courts are split on this issue. However, since there was no evidence of Dr. Korn's misconduct in Chicago, Illinois, it is unnecessary to decide this issue.

Hence, the board erred when it found that Dr. Korn had violated R.C. 4731.22(B)(3). The board's assignment of error is overruled.

In his first assignment of error, Dr. Korn argues that the trial court erred in finding that the board provided him with his statutory and due process rights in regards to the board's conduct of its hearings.

Dr. Korn states that the board failed to provide a timely hearing pursuant to R.C. 119.07, which provides that, when an agency is required to afford an opportunity for a hearing prior to the issuance of an order, it must notify the party involved of its right to a hearing. When the party requests a hearing, the agency shall immediately set the date, time, and place for such hearing and notify the party. The date set for such hearing shall be within fifteen days, but not earlier than seven days, after the party has requested a hearing unless otherwise agreed to by both the agency and the party.

R.C. 119.09 provides that an agency may postpone or continue any adjudication hearing upon the application of any party or upon an agency's own motion.

After Dr. Korn requested a hearing, the board sent a letter to him dated June 12, 1985, which said that it had set a hearing for June 20, and that the board had postponed the hearing in order to "more efficiently conduct its business." This method of setting a hearing and simultaneously postponing it occurred again in October 1985.

In *In re Barnes* (1986), 31 Ohio App.3d 201, 31 OBR 470, 510 N.E.2d 392, we found that R.C. 119.09, which allows an agency to continue a hearing on the board's own motion, must be read *in pari materia* with the fifteen-day deadline of R.C. 119.07. R.C. 119.06 through 119.10 set forth in detail the administrative procedures for the suspension or revocation of state licenses and gives the fifteen-day provision of R.C. 119.07 the character of being directory and not mandatory. Therefore, even though the continuance of the hearing in the *Barnes* case was perfunctory, it was within the authority and discretion of the board. The board's jurisdiction over the charges was not

terminated by its failure to hold the hearing within the fifteen-day period referred to in R.C. 119.07.

The board, on its own motion, continued Dr. Korn's hearing two more times. The motion for continuance was granted the first time because the board wanted a physical and medical examination of Dr. Korn. This motion was granted even though Dr. Korn refused to agree to the continuance. The second continuance was granted because Dr. Korn's psychiatric evaluation would not occur until after his hearing. The board also wanted to consolidate its original charges with the amended charges, but the board had not yet received Dr. Korn's request for a hearing on the amended charges. As previously stated, R.C. 119.09 allows an agency to continue adjudication hearings on its own motion.

Dr. Korn cites *State, ex rel. Hannan, v. DeCourcy* (1969), 18 Ohio St.2d 73, 47 O.O.2d 193, 247 N.E.2d 465, for the proposition that it is mandatory that an administrative board hear an issue within a specific time limitation established in a statute unless there would be an inevitable conflict with rights which are superior to those of the parties for whose benefit the duty is to be discharged. However, *DeCourcy* is distinguishable because R.C. 119.07 involved a statute which required the matter to be heard *and decided* within a specific time period rather than to be set for a hearing.

█ Dr. Korn also argues that the board failed to provide him with his procedural due process rights which he is entitled to under the Fourteenth Amendment to the United States Constitution.

The fundamental requirement of procedural due process is notice and hearing, that is, an opportunity to be heard. *Luff v. State* (1927), 117 Ohio St. 102, 157 N.E. 388.

█ Notice and hearing are necessary to comply with due process in an administrative proceeding which revokes an individual's license to practice a profession. *Jewell v. McCann* (1917), 95 Ohio St. 191, 116 N.E. 42.

█ Since Dr. Korn's license was ordered revoked, though the order was stayed for a five-year probationary period, notice and hearing were necessary to comply with the due process requirement.

A routine requirement of the Due Process Clause is "that an individual be given an opportunity for a hearing before he is deprived of any significant property interest." (Emphasis deleted.) *Boddie v. Connecticut* (1971), 401 U.S. 371, 379, 91 S.Ct. 780, 786–787, 28 L.Ed.2d 113, 119–120. In order to determine the type of hearing necessary, one balances the governmental interest versus the private interest. *Cleveland Bd. of Edn. v. Loudermill* (1985), 470 U.S. 532, 542–543, 105 S.Ct. 1487, 1493–1494, 84 L.Ed.2d 494, 504.

Generally, a hearing need not be elaborate. Something less than a full evidentiary hearing is generally sufficient in an administrative action. *Mathews v. Eldridge* (1976), 424 U.S. 319, 343, 96 S.Ct. 893, 907, 47 L.Ed.2d 18, 38.

The United States Supreme Court found that it was necessary to have a full evidentiary hearing prior to an adverse governmental action in the case of *Goldberg v. Kelley* (1970), 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287. That case involved the termination of welfare benefits. The court found that, since these benefits are the very means by which to live and help bring "within the reach of the poor the same opportunities that are available to others," the recipient was entitled to a full evidentiary hearing prior to termination.

In *Loudermill,* the court balanced the public interest versus the private interest and held that a post-termination hearing which was not a full evidentiary hearing complied with the due process rights of a fired public employee.

This case is similar to the *Loudermill* case insofar as they both involve loss of employment—though in Dr. Korn's case, he might lose his right to practice his profession which is a greater loss than the loss of a job in *Loudermill.* Nevertheless, Dr. Korn was afforded a pretermination hearing which offered an opportunity to be heard before a decision was made rather than the post-termination hearing found to be valid and constitutional in *Loudermill.*

Dr. Korn cites *Brouillette v. Bd. of Directors of Merged Area IX, Alias Eastern Iowa Community College* (C.A.8, 1975), 519 F.2d 126, which holds that the minimal requirements of due process afforded to a terminated teacher are: clear and actual notice of the reasons for the termination in sufficient detail to present evidence relating to them, notice of the names of those who made allegations against the teacher and the specific nature and basis for the charges, a reasonable time and opportunity to present testimony, and a hearing before an impartial board or tribunal.

Dr. Korn was fully apprised of the specific charges against him and was provided with the report of the examining physician, Dr. Turton. He was given a full opportunity to respond to the charges before an impartial board. He alleges error in failing to provide discovery, but does not show that he was prejudiced by the failure to do so. Even if the so-called "minimal" standards of *Brouillette* were applicable, there was no prejudice. Even in a criminal case where due process rights are paramount, a failure of the state to comply with required discovery does not necessarily result in dismissal of the charges. See *State v. Parson* (1983), 6 Ohio St.3d 442, 6 OBR 485, 453 N.E.2d 689.

There is a strong public interest in the removal of a doctor from the profession to protect innocent patients. Thus, dismissal of charges of miscon-

duct against a doctor should not lightly occur if substantive due process is accorded as it was in this case.

■ Dr. Korn also argues that the board erred in not issuing or quashing a subpoena to the board's secretary, Dr. Cramblett.

■ The medical board is subject to the Administrative Procedure Act, R.C. Chapter 119, by virtue of its licensing function pursuant to R.C. 4731.08 *et seq.* The board's determination to suspend Dr. Korn's license is an "adjudication" (as defined in R.C. 119.01[D]) and is, consequently, subject to R.C. 119.09, pursuant to R.C. 119.07.

Dr. Korn contends the board's refusal to issue a subpoena to Dr. Cramblett violates R.C. 119.09. That statute provides in part:

" * * * [U]pon the request of any party receiving notice of said hearing as required by section 119.07 of the Revised Code, [the agency] shall, issue a subpoena for any witness or a subpoena duces tecum to compel the production of any books, records, or papers, directed to the sheriff of the county where such witness resides or is found, which shall be served and returned in the same manner as a subpoena in a criminal case is served and returned. * * * "

The common pleas court upheld the board's quashing of the subpoena because it found that there was no representation on the record concerning the importance of Dr. Cramblett's subpoena.

In order to support reversal of a judgment, the record must show affirmatively not only that error intervened, but that such error was to the prejudice of the party seeking such a reversal. *Smith v. Flesher* (1967), 12 Ohio St.2d 107, 41 O.O.2d 412, 233 N.E.2d 137.

Dr. Korn argues that the board's failure to issue the subpoena to Dr. Cramblett was prejudicial error because Dr. Korn was seeking, among other things, records pertaining to the setting of his June hearing by the board. This was an issue raised in Dr. Korn's motion to dismiss. However, as we discussed previously, the board's simultaneous setting and continuance of the June 1985 hearing did not provide a reason to grant Dr. Korn's motion to dismiss on those grounds. Therefore, the board's quashing of the subpoena did not prejudice Dr. Korn.

■ Dr. Korn also argues that the board's order was void as it did not comply with R.C. 4731.23, 119.09 and 4731.221.

R.C. 4731.23 became effective on March 17, 1987. It establishes legal qualifications for the hearing examiner in a State Medical Board hearing. However, Dr. Korn's hearing was on December 10, 1985 and January 16, 17,

and 24, 1986. Therefore, R.C. 4731.23 would only apply retrospectively to Dr. Korn's hearing.

A statute may not be applied retrospectively unless the General Assembly specifically states it in the statute. *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, paragraph one of the syllabus. Since R.C. 4731.23 does not state that it should be applied retrospectively, the board was not required to comply with it.

Dr. Korn also argues that the board's order was void because it did not comply with R.C. 4731.221. However, he does not explain in his brief why the board's order does not comply with R.C. 4731.221, nor is there an apparent basis for that assertion.

Lastly, Dr. Korn argues that the board failed to comply with R.C. 119.09 because it did not explain why the agency modified or disapproved the recommendations of the doctor who held the hearing of Dr. Korn. However, after reviewing the minutes of April 8, 1987, it is obvious that there was a thorough explanation of the board's charges from the hearing examiner's report and recommendation.

Dr. Korn's first cross-assignment of error is overruled.

Dr. Korn argues in his second cross-assignment of error that the lower court erred in finding a violation of R.C. 4731.22(B)(6) and (14).

R.C. 4731.22(B)(6) states, in pertinent part, that the board shall revoke, suspend, or place a doctor on probation if his acts constitute "a departure from, or the failure to conform to, minimal standards of care of similar practitioners under the same or similar circumstances, whether or not actual injury to a patient is established."

R.C. 4731.22(B)(14) states that the board shall reprimand, revoke, suspend, or place on probation the doctor who violates "any provision of a code of ethics of a national professional organization as specified in this division," to wit: Sections (4) and (5) of the Code of Ethics of the American Osteopathic Association, as in effect prior to July 1985.

Section (4) states that:

"The physician shall give due notice to the patient or to those responsible for the patient's care when he withdraws from a case so that another physician may be summoned."

Section (5) states:

"A physician is never justified in abandoning a patient."

Initially, it is noted that a court reviewing a decision of the board is confronted with the issue of whether the decision is against the manifest

weight of the evidence and not whether the board abused its discretion. *Arlen v. State* (1980), 61 Ohio St.2d 168, 15 O.O.3d 190, 399 N.E.2d 1251.

 The authority of the court of common pleas to review a disciplinary action of the board under R.C. Chapter 119 is limited to a decision as to whether the order is supported by reliable, probative, and substantial evidence and is in accordance with law. *Arlen, supra.*

A review of the facts indicates that Dr. Korn received a phone call on January 28, 1985 around 2:30 p.m., which upset him, and he left his office. He did not leave a phone number and there was no other doctor on duty. Dr. Korn did not return to his practice until March 25, 1985, although the doctor's wife, his office manager, and a physician who worked part-time in his clinic covered for him. According to the office manager, his business was able to function as normal. Additionally, Dr. Korn's wife learned where her husband was, although the office manager never knew his location.

The board found that Dr. Korn, by failing to disclose his whereabouts or intended designation, made himself unavailable for an indefinite period of time for consultation in case emergencies arose with regard to any of his patients. Others, not Dr. Korn, made medical attention available to Dr. Korn's patients. The common pleas court held that there was reliable, probative, and substantial evidence to support that finding.

Dr. Korn argues that his patients were not prejudiced in any way by his absence. Although this might be true, and there is no evidence in the record to support or deny this, there was evidence that Dr. Korn did not take reasonable steps to assure that his patients' welfare was not prejudiced. The issue is not whether it was prudent and responsible that Dr. Korn left his practice because he was personally and emotionally distressed, but the manner in which he left.

The board found that Dr. Korn was, at the time, experiencing emotional distress. It found additionally that, while Dr. Korn may have been wise to withdraw temporarily from patient care, his professional responsibilities required that he do so in a manner which took into consideration the rights and needs of his patients. He should have given due notice to his patients or to those responsible for his patients' care. It found that Dr. Korn's claim of personal emotional stress did not rise to the level of impairment and, based on this, his irresponsible actions with regard to his patients were not justified.

In reviewing the judgment of the common pleas court concerning the sufficiency of the evidence, our review is limited to whether the common pleas court abused its discretion. *Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App.3d 159, 11 OBR 242, 463 N.E.2d 1280. Abuse of discretion

implies a decision without a reasonable basis or one which is clearly wrong. A reasonable person could find that Dr. Korn was irresponsible in the manner in which he left his practice and patients, and that the fact that others picked up the pieces protecting the patients did not excuse the violation of his duties.

Dr. Korn's second cross-assignment of error is overruled.

All assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

BOWMAN, J., concurs.

STRAUSBAUGH, J., concurs separately.

STRAUSBAUGH, Judge, concurring separately.

I concur in the opinion of the majority. With respect to the cross-appeal, I do so only because I cannot find a clear abuse of discretion by the common pleas court regarding the sufficiency of evidence, although there seems to me a serious question whether Dr. Korn was afforded a fair hearing. Had I been the trial court I probably would have found differently.