OPINION
Ferieda M. Walker, M.D., appellant, appeals a June 13, 2001 entry of the Franklin County Court of Common Pleas affirming the order of the State Medical Board of Ohio ("the Board"), appellee, revoking appellant's medical license.
Appellant became licensed to practice medicine in Ohio in 1992. In May or June of 1998, Robin Brockman, a police officer with the city of Dayton, learned from a neighbor that appellant ran a weight-loss clinic. Brockman was interested in losing weight and scheduled an appointment with appellant. At her appointment, Brockman was prescribed phentermine hydrochloride (a Schedule IV controlled substance anorectic used for weight loss) ("phentermine"), and observed appellant's method of operation. While Brockman was in the waiting room with approximately twenty other patients, appellant passed out before and after photos of her patients, explained the difference between black and white female bodies and how they feel about themselves, and guaranteed the patients they would lose weight or get a refund. Appellant did not conduct any physical examinations except to listen to each patient's heart over their clothing for a few seconds while she continued talking. She also did not ask the patients any personal questions. Each patient filled out a basic questionnaire, was weighed in by an assistant, and was given a two-week supply of phentermine. Brockman made subsequent office visits, during which an assistant weighed her and then gave her an additional two-week supply of phentermine for $25.
After her family doctor questioned how she was losing weight, Brockman told her doctor she was taking phentermine that was given to her by appellant. The family doctor suggested that she speak with someone at the police department because she did not think appellant's methods were proper. Brockman met with Detective Dennis Castle, who placed a wire on her and inserted a hidden video camera in her purse. Brockman returned to appellant's office and observed the same method of operation that she had on previous visits. She returned several times, and each time was given phentermine without a physical examination or any communication with appellant. On one occasion, Brockman was also permitted to buy two Viagra tablets for $40 from appellant's receptionist, claiming they were for her fictitious husband. The receptionist did not explain any side effects, ask if her husband had any health problems, or ask why the pills were needed.
Two other undercover officers, Detective Holly Murchland and Deputy Jeanine Whittaker, each possessing a wire and hidden camera, were then sent to appellant's office. The officers had the same experience as Brockman and were given phentermine. Detective Castle then called a phone number on one of appellant's business cards that advertised Viagra. Appellant called back and told Detective Castle to come to her office where he could have as many pills as he wanted for $20 each. Detective Castle went to appellant's office and purchased three tablets for $25 each. Appellant did not ask any medical history or give an examination, although she did ask him if he was taking nitroglycerin. A search warrant was eventually obtained, and appellant's office was searched on November 4, 1998. The information and evidence gathered during the search and investigation was given to the Board.
In May 1999, the Board notified appellant that it would take disciplinary action against her license. The proposed discipline regarded appellant dispensing phentermine to patients for excessive periods without conducting physical examinations, taking medical histories, ruling out pregnancy, or determining a patient's propensity for drug and alcohol use. The Board also alleged appellant dispensed Viagra to patients without investigating the patients' sexual histories or performing any physical examinations. The Board further alleged appellant failed to account for 139,696 unit doses of phentermine she purchased between January 1, 1997, and November 4, 1998. The Board charged that appellant's conduct constituted violations of:
 R.C. 4731.22(B)(10) commission of an act that constitutes a felony, to wit, R.C. 2925.03, trafficking in drugs.
 R.C. 4731.22(B)(20) violating, committing, assisting, or conspiring to violate OAC 4731-11-04(B) and (C) and 4731-11-02(E) and (F).
 R.C. 4731.22(B)(2) failure to use reasonable care discrimination in the administration of drugs or failure to employ acceptable scientific methods in selection of drugs or treatment.
 R.C. 4731.22(B)(6) departure from minimal standards of care similar to practitioners under the same or similar circumstances, whether or not injury is established.
 R.C. 4731.22(B)(12) commission of an act that constitutes a
 misdemeanor, to wit, R.C. 3719.07, Records of Controlled Substances (based upon appellant's failure to account for the missing phentermine doses).
A hearing before the Board was scheduled for September 27, 1999, and appellant requested a continuance based upon her possible indictment by the Montgomery County Grand Jury. The request was denied. The day of the hearing, the same request was made and denied. However, due to the illness of appellant's counsel, the hearing was continued until November 22, 1999. On November 17, 1999, appellant requested a continuance of the hearing due to her own illness. The request was granted.
The hearing finally commenced on February 1, 2000, but on February 3, 2000, appellant requested another continuance based upon her indictment on February 2. The hearing examiner denied this request because the evidence already presented indicated possible public risk if the hearing were to be continued. After the continuance was denied, appellant testified on her own behalf.
On May 9, 2000, the hearing examiner issue a report and recommendation proposing the Board permanently revoke appellant's license. Appellant filed objections. On June 14, 2000, the Board considered the matter. Appellant, her counsel, and the assistant attorney general were permitted to address the Board. After deliberation, the Board voted to permanently revoke appellant's license. Appellant appealed to the Franklin County Court of Common Pleas, which affirmed the Board's decision. Appellant appeals, asserting the following four assignments of error:
 1. The Trial Court erred by affirming the Board's Order, which was not in accordance with law, because of the failure of the Hearing Examiner to continue the administrative hearing to permit Appellant to safeguard Appellant's privilege against self-incrimination.
 2. The Trial Court erred when it failed to vacate the Board's Order as not in accordance with law, because the Order was the result of a proceeding that forced Appellant to forego her Constitutional privilege against self-incrimination.
 3. The Trial Court abused its discretion by affirming an administrative order that resulted from a proceeding which violated Appellant's Constitutional rights to Due Process and Equal Protection of Law.
 4. The Trial Court erred in upholding the Board's Order where the expert evidence essential to reach an administrative determination was provided by the Board itself rather than an expert witness capable of being cross-examined.
Appellant addressed her first three assignments of error together in her brief, and because they are related, we will do the same. Appellant argues in her first assignment of error the trial court erred when it affirmed the hearing examiner's denial of her motion to continue the administrative hearing based upon the privilege against self-incrimination. Appellant argues in her second assignment of error the trial court erred when it failed to vacate the Board's order because the order was the result of a proceeding that forced appellant to forego her constitutional privilege against self-incrimination. In her third assignment of error, appellant asserts the trial court abused its discretion when it affirmed the Board's order because it resulted from a proceeding that violated her constitutional rights to due process and equal protection.
In an appeal from a Board order, a reviewing trial court is bound to uphold the order if it is supported by reliable, probative, and substantial evidence, and is in accordance with law. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621; R.C. 119.12. Reliable, probative, and substantial evidence has been defined as follows:
 (1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true. (2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) "Substantial" evidence is evidence with some weight; it must have importance and value. Our Place, Inc. v. Ohio Liquor Control Comm. (1992), 63 Ohio St.3d 570, 571.
However, an appellate court's review is even more limited than that of the trial court. Pons, at 621. While it is incumbent on the trial court to examine the evidence, the appellate court is to determine only if the trial court abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Id. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for those of the medical board or a trial court. Id. Instead, the appellate court must affirm the trial court's judgment. Id.
In Pons, at 621-622, the Ohio Supreme Court held:
 Moreover, when reviewing a medical board's order, courts must accord due deference to the board's interpretation of the technical and ethical requirements of its profession. The policy reason for this was noted in Arlen v. State (1980), 61 Ohio St.2d 168, 173, 15 O. O.3d 190, 194, 399 N.E.2d 1251, 1254-1255: "`* * * The purpose of the General Assembly in providing for administrative hearings in particular fields was to facilitate such matters by placing the decision on facts with boards or commissions composed of [people] equipped with the necessary knowledge and experience pertaining to a particular field. * * *'" (Quoting Farrand v. State Med. Bd. [1949], 151 Ohio St. 222, 224, 39 O.O. 41, 42, 85 N.E.2d 113, 114.)
Therefore, absent an abuse of discretion of the trial court, this court must affirm the trial court's judgment. On questions of law, however, the common pleas court does not exercise discretion and our review is plenary. Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd. (1992), 63 Ohio St.3d 339, paragraph one of the syllabus.
The trial court found the hearing examiner was not required to continue the hearing based upon criminal indictment. The Fifth Amendment protects a person against incrimination through compelled testimony or other compelled acts having some testimonial character. It is well-recognized that this constitutional protection applies both to the accused in criminal proceedings and to witnesses in criminal and civil proceedings. Lefkowitz v. Turley (1973), 414 U.S. 70, 77. In civil proceedings, the amendment prohibits the state from compelling a witness to testify as to matters that may tend to incriminate such witness in subsequent proceedings. McCarthy v. Arndstein (1924), 266 U.S. 34, 40. Compulsion, in this sense, arises whenever some penalty, be it imprisonment or economic coercion, is imposed for failing to offer testimony. Turley, at 77-78, Lefkowitz v. Cunningham (1977), 431 U.S. 801, 805.
Appellant asserts the hearing examiner should have continued her case. Prior to the commencement of the proceedings, appellant was aware she was a target for criminal indictment, and during the course of the proceedings, she was actually indicted. She claims that because the magistrate denied her motion for continuance, she was forced to testify on her own behalf and incriminate herself in violation of theFifth Amendment of the United States Constitution. The trial court found that a continuance was not mandatory under the circumstances, citing Tedeschi v. Grover (1988), 39 Ohio App.3d 109. We agree. This court found in Tedeschi that the Fifth Amendment protection against compulsory, self-incriminating testimony does not extend to prohibit civil litigation while the possibility of criminal prosecution exists. Id., paragraph one of the syllabus. Thus, we found in Tedeschi the trial court did not abuse its discretion in refusing to grant a continuance based on defendant's claim of Fifth Amendment privilege when the defendant was under investigation by a federal grand jury for various infractions of the United States Code.
In State ex rel. Verhovec v. Mascio (1998), 81 Ohio St.3d 334, the Ohio Supreme Court reasoned as we did in Tedeschi. In Verhovec, the Supreme Court found the trial court abused its discretion in staying a civil case pending the resolution of the defendant's criminal appeal in order to protect the defendant's Fifth Amendment right against self-incrimination. The Supreme Court reasoned that if it were to hold otherwise, convicted criminal defendants could unreasonably delay civil trials by appeals of their convictions. The Supreme Court noted that, similarly, a stay or continuance of a civil trial is not required pending an appeal from a conviction and sentence in a criminal case merely because the possibility exists that the criminal case could be reversed and remanded for trial, citing Barr v. Intermark Internatl., Inc. (Aug. 28, 1992), Greene App. No. 91-CA-16, unreported. Therefore, we find our holding in Tedeschi and the Ohio Supreme Court's reasoning in Verhovec supports the hearing examiner's decision not to continue appellant's disciplinary case.
Further, once adequate warnings are given, the privilege against self-incrimination may be relinquished without an express statement of waiver. The privilege is not violated if the witness testifies without objection and it is inferred that she did so voluntarily. State v. Jenkins (1984), 15 Ohio St.3d 164, 228-229, citing Burke v. State (1922), 104 Ohio St. 220; Lindsey v. State (1903), 69 Ohio St. 215, 223. Thus, when the witness answers the question, her privilege is automatically waived. Rogers v. United States (1951), 340 U.S. 367; Burke, supra, 229-230. Also, the privilege may not be asserted in advance of the questions; it must be asserted upon particular questions. In re Morganroth (C.A.6, 1983), 718 F.2d 161, 167.
In the present case, appellant was free to assert her Fifth Amendment privilege and refuse to testify. Indeed, she did invoke her privilege upon cross-examination with regard to the Viagra pills, and the hearing officer acknowledged her privilege. The record reveals that appellant clearly took the stand on direct examination of her own accord, did not assert her privilege during questioning, and was not compelled by the state to forego her privilege. See Lindsey, supra, at 223 (there is no compulsion if the witness does not object to the questioning). The state threatened no penalty if she refused to testify, and appellant was not under subpoena. Merely because appellant and her counsel felt that her testimony was strategically vital to her defense does not violate or implicate any Fifth Amendment guarantee. The potential loss of her medical license does not, in and of itself, raise a claim of compulsion by the state. Further, presumably appellant wanted her case stayed until her criminal trial wound its way through the entire judicial process, which the Ohio Supreme Court found to be an unreasonable delay in Verhovec.
Appellant also presents a Fifth Amendment argument regarding her medical records, which were obtained from appellant's premises via a search warrant, citing Cincinnati v. Bawtenheimer (1992),63 Ohio St.3d 260. However, appellant misinterprets the holding of Bawtenheimer, and we find it inapplicable to the facts of the present case. In Bawtenheimer, the state had subpoenaed the tax records of an individual who refused to produce them on Fifth Amendment grounds, and the city brought a criminal action against the individual. The Ohio Supreme Court found in Bawtenheimer that the act of producing documents or other evidence may invoke the protection against self-incrimination because such act may be testimonial. In the present case, appellant's records were obtained via a search warrant and were not subpoenaed. Thus, no testimonial act on behalf of appellant was present. We find Bawtenheimer inapposite.
Several of appellant's arguments also assert the Board's actions denied her due process. To be consistent with the Due Process Clause, deprivation of a right, including revocation of a professional license, must be preceded by notice and a hearing. In the Matter of Mattie L. Vaughn, M.D. (Nov. 30, 1995), Franklin App. No. 95APE05-645, unreported. Determining the type of hearing that minimally comports with due process requires a balancing of the governmental and individual interests at stake. Korn v. Ohio State Medical Bd. (1988), 61 Ohio App.3d 677, 684. Ohio's Due Course Clause in Section 16, Article I, Ohio Constitution is equivalent to the Due Process Clause of the Fourteenth Amendment. Sorrell v. Thevenir (1994), 69 Ohio St.3d 415, 422. Appellant does not contest in any manner that she was not given notice or hearing, and we find that the Board's action comported with the requirements of due process. For the foregoing reasons, the hearing officer did not err in refusing to stay the administrative hearing, and appellant's due process and equal protection rights were not violated when she voluntarily chose to testify. Appellant's first, second, and third assignments of error are overruled.
Appellant argues in her fourth assignment of error the trial court erred in upholding the Board's order where the expert evidence was provided by the Board itself rather than an expert witness capable of being cross-examined. Although not included in the text of the assignment of error itself, appellant first argues the Board's medical expert, Dr. Walter Clark, was not qualified to be an expert and should not have been considered by the Board. Appellant maintains that under the Ohio Rules of Evidence, an expert must first be so qualified and the court must make a threshold determination that the witness qualifies as an expert. However, as this court has reiterated numerous times, under the medical board's hearing rules, the Ohio Rules of Evidence are not controlling upon a hearing examiner when determining the admissibility of evidence. Ohio Adm. Code 4731-13-25(A); Hayes v. State Med. Bd. of Ohio (2000),138 Ohio App.3d 762, 769; Singh v. State Medical Bd. of Ohio (May 14, 1998), Franklin App. No. 97APE09-1245, unreported; In re Shelly (Dec. 31, 1992), Franklin App. No. 92AP-440, unreported. Thus, appellant's arguments as they rely upon specific rules of evidence are unpersuasive.
Notwithstanding, we find the Board properly relied upon Dr. Clark as an expert. Dr. Clark is board certified in internal medicine, and an assistant clinical professor at Case Western Reserve University School of Medicine. Although he testified that his current position is one hundred percent administrative, from about 1995 to 1999, forty percent of his practice was clinical, and from about 1990 to 1995, one hundred percent of his practice was clinical. He testified that he has treated patients for obesity, has used controlled substances for overweight patients, was familiar with the regulations governing the use of controlled substance anorexics, and was familiar with the Board rules in the Ohio Administrative Code concerning anorexics as they existed prior to October 31, 1998. Given Dr. Clark's testimony regarding his training, medical knowledge, and previous experience in the areas of obesity and anorexics, the hearing examiner did not err in finding Dr. Clark qualified as an expert witness. Further, despite appellant's claims to the contrary, Dr. Clark specifically based his opinions upon a reasonable degree of medical probability and testified that he knew the standards of care.
Appellant also argues the trial court erred in finding that, even if Dr. Clark was not qualified to give expert testimony, the Board may supply the requisite medical expertise itself. Appellant claims the trial court's citation to Arlen v. State (1980), 61 Ohio St.2d 168, in support of such proposition, was in error. We disagree. The legislature and the courts of Ohio have delegated comprehensive decision-making power to the Board. Such power includes, but is not limited to, the authority to rely on the Board's own knowledge when making a decision. It is well-established that "* * * the board may rely on its own expertise to determine whether a physician failed to conform to minimum standards of care." Id. at 172. Expert testimony as to a standard of practice is not even mandatory in a license revocation hearing. Such a requirement for expert testimony in the record of a license revocation proceeding would usurp the power of the Board's broad measure of discretion. Id. Eight of the twelve members of the Board are licensed physicians who possess specialized technical knowledge. Such specialized knowledge renders the Board capable of both interpreting the technical requirements of the medical profession and determining whether a physician's conduct falls below the minimal standard of care. Pons, supra, at 623; see, also, State Med. Bd. of Ohio v. Murray (1993), 66 Ohio St.3d 527; Rajan v. State Med. Bd. of Ohio (1997), 118 Ohio App.3d 187; Johnson v. State Med. Bd. of Ohio (Sept. 28, 1999), Franklin App. No. 98AP-1324, unreported. Thus, the trial court's interpretation of Arlen was correct. Appellant's fourth assignment of error is overruled.
As appellant has failed to set forth any arguments regarding the Board and trial court's analyses of the merits, we will not discuss such in detail. Our review of the record convinces us the trial court did not abuse its discretion in concluding there was reliable, probative, and substantial evidence that appellant violated the statute and rules cited by the Board.
Accordingly, appellant's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
LAZARUS and DESHLER, JJ., concur.