[Cite as *Froehlich v. Ohio State Med. Bd.*, 2016-Ohio-1035.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Kurt W. Froehlich, M.D., | : | |
| Appellant-Appellant, | : | No. 15AP-666 |
| | | (C.P.C. No. 15CV-1349) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Ohio State Medical Board, | : | |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on March 15, 2016

**On brief:** *Maguire & Schneider, LLP, Karl H. Schneider, Mark R. Meterko,* and *Britney S. Brouwer*, for appellant. **Argued:** *Karl H. Schneider*

**On brief:** *Michael DeWine*, Attorney General, and, and *Melinda R. Snyder*, for appellee. **Argued:** *Melinda R. Snyder*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Appellant, Kurt W. Froehlich, M.D., appeals from a decision and entry of the Franklin County Court of Common Pleas affirming the order of appellee, State Medical Board of Ohio ("the board"), permanently revoking Froehlich's license to practice medicine and surgery in Ohio. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} Froehlich is a physician who practices obstetrics and gynecology as a solo practitioner. By notice of opportunity for hearing dated December 11, 2013, the board notified Froehlich that it proposed to take disciplinary action against his certificate to practice medicine and surgery in Ohio. In the notice, the board alleged Froehlich engaged

in inappropriate sexual contact with two patients in violation of R.C. 4731.22(B)(20) and Ohio Adm.Code 4731-26-02(A). Additionally, the board alleged Froehlich was found guilty of a misdemeanor in the course of practice in violation of R.C. 4731.22(B)(11). The board alleged these violations also constituted a violation of R.C. 4731.22(B)(6). Froehlich timely requested a hearing in response to the notice.

{¶ 3} At the hearing commencing June 23, 2014, Froehlich testified regarding the allegations contained in the notice. According to Froehlich's testimony, on June 17, 2010, Patient 1 came to his office for an annual checkup and Pap smear. After he performed the examination and after the chaperone left the room, but while Patient 1 was still in a gown on the examination table, Froehlich testified Patient 1 asked him a question about sexual arousal and the location of the "G-spot." (June 23, 2014 Tr. Vol. I, 33.) Froehlich explained that the G-spot is "a location in the anterior vaginal wall" consisting of a dense area of nerves, though he agreed there is some dispute in the medical community about whether such an area actually exists. (June 23, 2014 Tr. Vol. I, 34.) Froehlich testified he used his fingers to physically locate Patient 1's G-spot. Froehlich did not document in Patient 1's record either Patient 1's question or his actions in physically locating her G-spot.

{¶ 4} Froehlich testified that he subsequently encountered Patient 1 at the hospital where they both worked. In a call room at the hospital, Froehlich said he again demonstrated for Patient 1 the location of her G-spot and stimulated her to orgasm. Approximately one week later, Froehlich said he had a "sexual relationship" with Patient 1, engaging in sexual intercourse with her at the hospital. (June 23, 2014 Tr. Vol. I, 38.) In his testimony, Froehlich characterized his sexual encounters with Patient 1 as "[p]roblematic," and he acknowledged he was in a position of authority over Patient 1 because she worked in the labor and delivery area of the hospital. (June 23, 2014 Tr. Vol. I, 41.)

{¶ 5} Patient 2 had been Froehlich's patient since 2007. Froehlich testified he was uncertain whether he helped Patient 2 locate her G-spot during an office visit. However, the board's investigator, Michael W. Staples, testified at the hearing and read from a written statement Froehlich had prepared for Staples in which Froehlich stated he "showed [Patient 2] where her [G-spot] was," and also "saw her at the hospital and

stimulated her to orgasm." (June 23, 2014 Tr. Vol. I, 233.) Froehlich testified the sexual contact with Patient 2 occurred in an administrative room of the hospital in 2012.

{¶ 6} The board also heard testimony from S.F., a medical assistant who worked in Froehlich's office. S.F. testified that on July 30, 2012, she stopped in Froehlich's office to say goodbye as she was preparing to leave work. According to S.F.'s testimony, Froehlich "stood up and started walking towards [her] and -- and said something about how he had wanted [her] since [she] started working there." (June 23, 2014 Tr. Vol. I, 126.) S.F. said Froehlich then placed his hand on her side and "started rubbing up and down from probably about the breast area down to the hips," and S.F said she remembered being "very scared." (June 23, 2014 Tr. Vol. I, 126.) S.F. said she started to push Froehlich away and attempted to back away from him, but Froehlich "reached around and went up [her] shirt and he got up under [her] bra and had a hand completely on [her] right breast." (June 23, 2014 Tr. Vol. I, 127.) S.F. testified that she pushed his hand out of her shirt and tried to leave, but Froehlich then put his hand under her pants, one or two inches under her underwear. After she pushed his hand away and again tried to leave, S.F. said Froehlich turned her around, got close to her face and said "[y]ou know, I think it's best that you don't work here anymore." (June 23, 2014 Tr. Vol. I, 128.)

{¶ 7} S.F. reported the incident to the police and provided a written statement to the police. Froehlich ultimately entered a plea of no contest and was found guilty of assault in violation of R.C. 2903.13, a first-degree misdemeanor.

{¶ 8} At the hearing, Froehlich testified regarding the incident with S.F., stating he perceived S.F. as being flirtatious during this encounter. Froehlich testified he was standing behind S.F. and put a hand on her hip and another hand on her shoulder, that S.F. leaned back toward him, but that he said either "I can't," or "[w]e can't." (June 23, 2014 Tr. Vol. I, 95.) Froehlich testified that S.F. told him he was "a bad boy," and walked out of the office. (June 23, 2014 Tr. Vol. I, 95.) Froehlich also described several instances before the assault in which he perceived S.F. to behave flirtatiously toward him. Among these instances, Froehlich described a time that he walked in on S.F. using a breast pump to express breast milk and a separate occasion in which he asked S.F. to administer a testosterone injection to his buttocks.

{¶ 9}   Following the hearing, on November 25, 2014, the hearing examiner issued a report and recommendation finding Froehlich's sexual conduct with Patient 1 and Patient 2 violated Ohio Adm.Code 4731-26-02, R.C. 4731.22(B)(20), and R.C. 4731.22(B)(6).  The hearing examiner additionally found Froehlich had been found guilty of a misdemeanor in the course of practice, in violation of R.C. 4731.22(B)(11).  Although the hearing examiner recommended a one-year suspension of Froehlich's certificate to practice medicine, he noted that "[g]iven Dr. Froehlich's sexual misconduct with two patients and criminal behavior toward an employee, the Board would be well-justified in permanently revoking Dr. Froehlich's certificate."  (Report and Recommendation, 30.) Froehlich filed objections to the hearing examiner's proposed order.

{¶ 10} At the board's meeting on January 14, 2015, Froehlich and his counsel addressed the board.  After discussing the nature of Froehlich's conduct and the appropriate disciplinary action, the board voted to modify the hearing examiner's proposed order and permanently revoke Froehlich's certificate to practice medicine and surgery in Ohio.

{¶ 11} Froehlich's counsel filed a motion for reconsideration, arguing there had not been a proper motion to amend the proposed order.  Froehlich's counsel further sought clarification as to whether the amended order included a 30-day wind-down period.  In response to Froehlich's motion, the board voted to reconsider the matter.  Froehlich suggests the audio recording of the board's meeting demonstrates his counsel was not speaking out of turn, but the audio recording is not a part of our record and, thus, we must rely on the board's minutes.  Pursuant to the board's minutes:

> Mr. McGovern [Froehlich's counsel] rose and began addressing the Board.  Not having been recognized, Mr. Kenney ruled that Mr. McGovern was out of order.  Mr. McGovern continued to attempt addressing the Board.  At Mr. Kenney's direction, the Ohio State Highway Patrolman present escorted Mr. McGovern from the meeting.

(Excerpt from the Draft Minutes of Jan. 14, 2015 hereinafter "Board's Minutes," 5.)

{¶ 12} Following the removal of Froehlich's counsel from the meeting, the board made a motion to amend the proposed order.  The board voted to include a 30-day wind-down period in the amended order, and the board further voted that Froehlich's

objections would not be addressed as part of the reconsideration. With the inclusion of the 30-day wind-down period, the board approved the amended order permanently revoking Froehlich's certificate to practice medicine and surgery in Ohio.

{¶ 13} On February 16, 2015, Froehlich filed an appeal from the board's order to the trial court. Froehlich argued the (1) board's order is invalid due to alleged procedural errors the board made during its January 14, 2015 meeting, (2) the board violated Ohio's open meeting requirement contained in R.C. 121.22, (3) the board erroneously concluded that his misdemeanor assault conviction occurred in the course of practice, and (4) the board erred in considering conduct not contained in the notice of opportunity for hearing. The trial court concluded reliable, probative, and substantial evidence supported the board's order and that the board's order is in accordance with law and, thus, affirmed the board's order. The trial court journalized its decision in a June 9, 2015 decision and entry. Froehlich timely appeals.

## II. Assignments of Error

{¶ 14} Froehlich assigns the following errors for our review:

> 1. The Trial Court erred when it found that the State Medical Board of Ohio's removal of Dr. Froehlich's counsel from the Board meeting was in accordance with the law.
>
> 2. The Trial Court erred when it found that the State Medical Board of Ohio's consideration of uncharged conduct was in accordance with the law.
>
> 3. The Trial Court erred when it found that Dr. Froehlich's misdemeanor assault conviction occurred in the course of the practice in violation of R.C. 4731.22(B)(11).
>
> 4. The Trial Court erred in affirming the State Medical Board of Ohio's finding that Dr. Froehlich's testimony regarding the assault incident was less believable than S.F.'s testimony.

## III. Standard of Review

{¶ 15} In reviewing an order of an administrative agency under R.C. 119.12, a common pleas court must consider the entire record to determine whether reliable, probative, and substantial evidence supports the agency's order and whether the order is in accordance with law. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110 (1980).

The common pleas court's "review of the administrative record is neither a trial de novo nor an appeal on questions of law only, but a hybrid review in which the court 'must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " *Lies v. Ohio Veterinary Med. Bd.*, 2 Ohio App.3d 204, 207 (1st Dist.1981), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). The common pleas court must give due deference to the administrative agency's resolution of evidentiary conflicts, but "the findings of the agency are by no means conclusive." *Conrad* at 111. On questions of law, the common pleas court conducts a de novo review, exercising its independent judgment in determining whether the administrative order is " 'in accordance with law.' " *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993), quoting R.C. 119.12.

{¶ 16} An appellate court's review of an administrative decision is more limited. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993). The appellate court is to determine only whether the common pleas court abused its discretion. *Id.*; *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 218 (1983). On review of purely legal questions, however, an appellate court has de novo review. *Big Bob's, Inc. v. Ohio Liquor Control Comm.*, 151 Ohio App.3d 498, 2003-Ohio-418, ¶ 15 (10th Dist.).

## IV.  First Assignment of Error – Removal of Counsel from Board Meeting

{¶ 17} In his first assignment of error, Froehlich argues the trial court erred in determining the board acted in accordance with law when it removed Froehlich's counsel from the board's meeting. More specifically, Froehlich asserts the board's removal of his counsel from the meeting (1) violated the requirements of procedural due process, (2) violated the board's own policy with respect to following The Standard Code of Parliamentary Procedures ("Standard Code"), and (3) violated the Ohio Open Meetings Act. Because this assignment of error concerns questions of law, we review it de novo. *Big Bob's, Inc.* at ¶ 15.

### A.  Procedural Due Process

{¶ 18} Under this assignment of error, Froehlich first argues the board violated his right to procedural due process by removing his counsel from the board's January 14, 2015 meeting.

{¶ 19} In an administrative hearing, " '[t]he fundamental requirement of procedural due process is notice and hearing, that is, an opportunity to be heard.' " *Urban v. State Med. Bd.*, 10th Dist. No. 03AP-426, 2004-Ohio-104, ¶ 25, quoting *Korn v. Ohio State Med. Bd.*, 61 Ohio App.3d 677, 684 (10th Dist.1988). " 'Procedural due process also embodies the concept of fundamental fairness.' " *Id.*, quoting *Sohi v. Ohio State Dental Bd.*, 130 Ohio App.3d 414, 422 (1st Dist.1998). Additionally, " 'notice and hearing are necessary to comply with due process in an administrative proceeding which revokes an individual's license to practice a profession.' " *Id.*, quoting *Korn* at 684.

{¶ 20} The board provided Froehlich with written notice of the allegations against him and subsequently afforded him a three-day hearing during which Froehlich was represented by counsel and during which Froehlich was able to present evidence and arguments. Following the hearing, the board provided Froehlich with the proposed order and allowed Froehlich to submit written objections to the proposed order. At the board's meeting, the board allowed Froehlich's counsel to address the board before formally adopting the proposed order. The board further accepted Froehlich's motion for reconsideration, and in fact granted the motion for reconsideration to formally move to amend the proposed order before voting on the proposed order as amended. Though Froehlich now argues his counsel's removal from the meeting without the board giving him the opportunity to make a record or raise any objections deprived him of his opportunity to be heard, the record undermines this argument. The board allowed Froehlich to file his motion for reconsideration and subsequently voted to reconsider the matter. It was not until Froehlich's counsel attempted to argue again, which the board had previously allowed him to do at the morning meeting before the first vote, that the board removed Froehlich's counsel for speaking out of turn and being disruptive.

{¶ 21} As the board notes, Froehlich cites no authority to support his argument that his right to procedural due process encompasses a right to have his counsel speak out of turn at the board's meeting. The record here does not demonstrate that the board's removal of Froehlich's counsel from the board meeting somehow deprived Froehlich of his right to procedural due process. *See Khan v. State Med. Bd. of Ohio*, 10th Dist. No. 14AP-772, 2015-Ohio-1242, ¶ 19 (noting that, on the "narrower question of what due process must be afforded a physician when guilt has already been adjudged and only the

issue of sanction remains before the board[,] * * * a physician has no cognizable due process interest in having another opportunity to be heard"), citing *In re Vaughn v. State Med. Bd. of Ohio*, 10th Dist. No. 95APE05-645 (Nov. 30, 1995). The board provided Froehlich ample opportunity to be heard throughout the administrative process. Thus, we do not agree with Froehlich that the board's removal of his counsel from the board's meeting violated his due process rights.

### B. The Standard Code of Parliamentary Procedures

{¶ 22} Froehlich next argues the board's order was not in accordance with law because the board did not use the right language in moving to amend the order to permanently revoke Froehlich's license. Froehlich asserts that board policy requires that official meetings follow the Standard Code, and, according to the Standard Code, whenever a motion is made, the board must vote upon the motion, or there must be a new motion to amend it. Here, a member of the board moved to approve and confirm the report and recommendation with the one-year suspension. During the discussion of this motion, another member of the board stated "he would favor  permanent revocation," and yet another board member stated he would "second." (Board's Minutes, 3.) Froehlich argues the board erroneously construed this exchange as a motion to amend the proposed order which denied Froehlich a potential vote on the proposed order without the amendment.

{¶ 23} The board is not required to use any "magic language" in order to make a motion. *See Nalluri v. State Med. Bd. of Ohio*, 10th Dist. No. 14AP-530, 2014-Ohio-5530, ¶ 20-21 (noting the appellant's failure to present any authority "for the proposition that the board's failure to follow the standard code invalidates the board's order," and noting that "[a]s a general rule, the courts cannot review questions of parliamentary law governing acts of a presiding officer with respect to the order of motions, and no appeal lies to the court for alleged errors of a presiding officer in administering parliamentary law"). Froehlich does not suggest the language as used at the board's meeting caused any confusion to other board members as to what, procedurally, was occurring. To the contrary, the minutes of the board's meeting construed the statement as the board member having "moved to amend the Proposed Order in order to permanently revoke Dr.

Froehlich's license," and that another doctor "seconded the motion."  (Board's Minutes, 3.)

{¶ 24} Second, to the extent Froehlich argues the failure to use any sort of magic language was a procedural error, that, when coupled with his counsel's removal from the meeting, resulted in a deprivation of his due process rights, this argument is untenable. As the meeting minutes reflect, even if the language used to amend the proposed order were somehow insufficient, the board granted Froehlich's motion to reconsider and corrected the language it used to move to amend the proposed order.  Thus, we do not agree with Froehlich that the board's alleged failure to follow the Standard Code somehow rendered the board's order contrary to law.

## C.  Ohio Open Meetings Act

{¶ 25} Finally under this assignment of error, Froehlich argues his counsel's removal from the board's meeting constituted a violation of the Ohio Open Meetings Act. R.C. 121.22 provides, in pertinent part:

> (A) This section shall be liberally construed to require public officials to take official action and to conduct all deliberations upon official business only in open meetings unless the subject matter is specifically excepted by law.
>
> * * *
>
> (H) A resolution, rule, or formal action of any kind is invalid unless adopted in an open meeting of the public body.  A resolution, rule, or formal action adopted in an open meeting that results from deliberations in a meeting not open to the public is invalid unless the deliberations were for a purpose specifically authorized in division (G) or (J) of this section and conducted at an executive session held in compliance with this section.  A resolution, rule, or formal action adopted in an open meeting is invalid if the public body that adopted the resolution, rule, or formal action violated division (F) of this section.

{¶ 26} Froehlich argues the board's removal of his attorney from the meeting violated R.C. 121.22(H).  He does not explain, however, how removing one member of the public for speaking out of turn renders the entire meeting in violation of R.C. 121.22. Additionally, although the Ohio Open Meetings Act requires open meetings, "[t]here is

nothing in the statute that requires that the public body permit a member of the public to speak at the meeting." *Wyse v. Rupp*, 6th Dist. No. F-94-19 (Sept. 15, 1995). Thus, we do not agree with Froehlich that the board violated the Ohio Open Meetings Act when it removed his counsel from the meeting.

{¶ 27} In summation, the trial court did not err in determining the board adopted its order in accordance with law and the board's removal of his counsel did not either implicate his due process rights or constitute a violation of Ohio law. Accordingly, we overrule Froehlich's first assignment of error.

## V. Second Assignment of Error – Consideration of Uncharged Conduct

{¶ 28} In his second assignment of error, Froehlich argues the trial court erred when it determined the board acted in accordance with law when it considered conduct not set forth in the notice of opportunity for hearing. More specifically, Froehlich asserts the board improperly considered (1) evidence that Froehlich walked in on S.F. while she was pumping breast milk and (2) evidence that Froehlich asked S.F. to administer a testosterone injection to his buttocks. Froehlich asserts the board's failure to provide him adequate notice of its intention to consider this conduct resulted in a violation of his due process rights. This assignment of error presents a question of law that we review de novo. *Big Bob's, Inc.* at ¶ 15.

{¶ 29} " 'An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Althof v. Ohio State Bd. of Psychology*, 10th Dist. No. 05AP-1169, 2007-Ohio-1010, ¶ 19, quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). " ' "The right to a hearing embraces not only the right to present evidence, but also a reasonable opportunity to know the claims of the opposing party and to meet them." ' " *Id.*, quoting *Gonzales v. United States*, 348 U.S. 407, 414, fn. 5 (1955), quoting *Morgan v. United States*, 304 U.S. 1, 18 (1938).

{¶ 30} In the context of a proceeding to revoke a medical license, this court has determined the board's notice is constitutionally sufficient where the notice includes (1) the allegation against the physician, (2) the statute directly involved, and (3) the

reasons for the board's proposed action. *Gross v. Ohio State Med. Bd.*, 10th Dist. No. 08AP-437, 2008-Ohio-6826, ¶ 24.

{¶ 31} Froehlich argues that because the notice of opportunity for hearing provided to him made no mention of the incidents related to the breast pump or the testosterone injection, the board could not consider that conduct. As a preliminary matter, as the trial court notes, it was Froehlich who volunteered this information as an explanation of his actions during the assault, using both instances as examples of times Froehlich believed S.F. had been flirtatious with him prior to the assault. Though Froehlich argues the board considered the uncharged conduct in order to discipline him, the record indicates the board considered the uncharged conduct in determining the appropriate sanction. This court has previously held that "a disciplinary body may consider aggravating circumstances, including uncharged misconduct, in determining the appropriate sanction for a member who violates the rules of practice." *Macheret v. State Med. Bd. of Ohio*, 188 Ohio App.3d 469, 2010-Ohio-3483, ¶ 27 (10th Dist.), citing *Columbus Bar Assn. v. Farmer*, 111 Ohio St.3d 137, 2006-Ohio-5342. As the trial court noted, the board's findings of Froehlich's violations involved the sexual conduct with Patient 1 and Patient 2, as well as Froehlich's assault conviction. Thus, we agree with the trial court that the actual charges before the board were not based on the two incidents to which Froehlich now points.

{¶ 32} Froehlich asserts that the references to the breast pump and the testosterone injection appear in the board's minutes in the context of a larger discussion of Froehlich's conduct before the board voted on whether or not to discipline him. As such, Froehlich argues it is at least unclear whether the board considered the uncharged conduct in determining whether or not to discipline him. However, this argument is mere speculation. There was ample, uncontested evidence before the board supporting the violations that had no relation to the instances with the breast pump and the testosterone injection. Thus, we do not agree with Froehlich that the board improperly considered uncharged conduct in determining whether to discipline him. Because the trial court did not err in determining the board's order was in accordance with law, we overrule Froehlich's second assignment of error.

## VI.  Third Assignment of Error – Course of Practice

{¶ 33} In his third assignment of error, Froehlich argues the trial court erred in concluding Froehlich's assault conviction occurred in the course of practice as required by R.C. 4731.22(B)(11).  This assignment of error presents a question of the interpretation of a statute, and we review it de novo.  *Hope Academy v. Ohio Dept. of Edn.*, 10th Dist. No. 07AP-758, 2008-Ohio-4694, ¶ 13.

{¶ 34} The board determined Froehlich violated R.C. 4731.22(B) and (B)(11), which permits the board to "limit, revoke, or suspend an individual's certificate to practice" based on "[a] plea of guilty to, a judicial finding of guilt of, or a judicial finding of eligibility for intervention in lieu of conviction for, a misdemeanor committed in the course of practice."  R.C. 4731.22 (B) and (B)(11).  The statute does not define "course of practice."  Froehlich argues that, at a minimum, "course of practice" must relate to the practice of medicine.  According to Froehlich, the evidence before the board demonstrated his misdemeanor assault conviction had no relation to the practice of medicine.

{¶ 35} "A physician's course of practice is not limited to consulting with or treating patients."  *Oyortey v. State Med. Bd. of Ohio*, 10th Dist. No. 12AP-431, 2012-Ohio-6204, ¶ 29.  This court has previously determined that a physician's performance of seemingly administrative tasks is within the course of practice.  *Higginbotham v. Perez*, 10th Dist. No. 93APE12-1711 (Sept. 6, 1994) (completion of medical records is within the course of practice); *Roy v. Ohio State Med. Bd.*, 80 Ohio App.3d 675, 682 (10th Dist.1992) (patient billing is within the course of practice); *Oyortey* at ¶ 30 (a physician's completion of a recommendation for a physician applicant occurs in the course of practice); *Davidson v. State Med. Bd. of Ohio*, 10th Dist. No. 97APE08-1036 (May 7, 1998) (obstructing official business by removing billing documents from patient files committed in the course of practice).

{¶ 36} Froehlich asserts his assault conviction had no relationship to his practice of medicine because it occurred after normal business hours and after all the patients had left the office.  However, the trial court identified the many connections the assault had to Froehlich's medical practice.  The assault occurred in Froehlich's office and the victim was his employee.  Froehlich testified that he was updating medical records on his computer when S.F. came into his office and that the assault occurred during a discussion about

how S.F.'s employment was going. When S.F. attempted to leave Froehlich's office following the assault, he told her it was best if she did not work there any longer. These facts are not in dispute, and they demonstrate the assault had a direct link to Froehlich's management and operation of his medical practice. Thus, we conclude Froehlich committed the assault in the course of practice under R.C. 4731.22(B)(11), and we overrule Froehlich's third assignment of error.

## VII.  Fourth Assignment of Error – Witness Credibility

{¶ 37} In his fourth and final assignment of error, Froehlich argues the trial court abused its discretion in determining reliable, probative, and substantial evidence supports the board's order. More specifically, Froehlich argues the board erroneously relied on S.F.'s testimony regarding the assault when Froehlich's testimony was more credible.

{¶ 38} S.F.'s testimony related to the board's finding that Froehlich violated R.C. 4731.22(B)(11) when he assaulted S.F. Under Ohio Adm.Code 4731-13-24, "[a] certified copy of a plea of guilty to, or a judicial finding of guilt of any crime in a court of competent jurisdiction is conclusive proof of the commission of all of the elements of that crime." Thus, even without S.F.'s testimony, the board, and subsequently the trial court, had sufficient reliable, probative, and substantial evidence to conclude Froehlich committed the assault.

{¶ 39} Accordingly, we conclude the trial court did not abuse its discretion in determining reliable, probative, and substantial evidence supports the board's order. We overrule Froehlich's fourth and final assignment of error.

## VIII.  Disposition

{¶ 40} Based on the foregoing reasons, the trial court did not err in affirming the board's order permanently revoking Froehlich's certificate to practice medicine. Having overruled Froehlich's four assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT and SADLER, JJ., concur.

_____